Finley v. Brown.

ALEXANDER FINLEY *v.* JAMES Y. BROWN *et al.*[1]

(*Knoxville.*    September Term, 1909.)

1. **ADOPTION OF CHILDREN.** In one State entitles them to inherit land in another State having similar adoption laws, when.

   Where a child in a foreign State, in which both it and its adoptive father are domiciled, has acquired under the laws of that State the *status* of a child by adoption, such child must, under the comity of States, receive recognition of its *status* as child in every other State having substantially similar adoption laws, and must be held capable of succeeding to real property in accordance with the laws of the State where the property lies, if adopted children are capable of inheriting under such laws. (*Post, pp.* 327-330, 335.)

   Cases cited and approved: Woodward v. Woodward, 87 Tenn., 644; Trust Co. v. Blessing, 103 Tenn., 237; Ross v. Ross, 129 Mass., 246; Gray v. Holmes, 57 Kan., 217; Van Matre v. Sankey, 148 Ill., 536; Melvin v. Martin, 18 R. I., 650; McColpin v. McColpin (Tex. Civ. App.), 77 S. W., 238; Woodward's Appeal, 81 Conn., 167, 168; Shick v. Howe, 137 Iowa, 249.

2. **SAME.** Same. Qualification of foregoing rule; provisions of the adoption statute of either State not to be extended to correspond to the other.

   Where the recognition of the *status* acquired by a foreign adoption is confined to the provisions of the local law of the State so recognizing the foreign adoption, or the statute of a foreign State is not permitted to extend any further than the local statute upon the same subject, and where the rights which may

---

[1] For conflict of laws as to adoption, see note to Irving v. Ford (Mass.), 65 L. R. A., 186.

Finley v. Brown.

be acquired under the local adoption statute are broader than those acquired under the adoption statute of a foreign State, in which the adoption was effected, the rights acquired under the foreign adoption will not be enlarged, so as to be commensurate with those granted by the adoption statute of the State so acting by comity, such recognition of the *status* acquired by a foreign adoption, when so confined and limited, cannot be held to be a breach of the policy of that State in which the land lies, where such State has a law of adoption; nor can it be held to be a violation of the statutes of descent. (*Post, pp.* 330-332, 335.)

Cases cited and approved: Keegan v. Geraghty, 101 Ill., 26, 41; Sunderland's Estate, 60 Iowa, 732.

3. **SAME. Same. Same. Our statutes of descent and adoption construed together give adopted child, though adopted in another State, the right of inheritance, when.**

The provision in our statute of descent (Shannon's Code, sec. 4163) that an intestate's land shall descend equally to all his sons and daughters, and that if the intestate died "without issue," his land shall descend equally to his brothers and sisters, must be construed in connection with our statute of adoption (Shannon's Code, sec. 5411) providing that the adopted child shall have "all the privileges of a legitimate child to the applicant, with capacity to inherit and succeed to the real and personal estate of such applicant, as heir and next of kin," so that where a foreign adoption is recognized in this State by comity, the same relation is created; at least to the extent that such *status* is fixed by the foreign statutes, unless the powers purporting to be given thereby are greater than those conferred by our own statute. (*Post, pp.* 332, 333.)

Code cited and construed: Secs. 4163, 5411 (S.); secs. 3268-3270, 4390 (M. & V.); secs. 2420, 3645 (T. & S. and 1858).

4  **SAME. Same. Same. Same.  Nonresident adopted child's right of inheritance is not impaired by nonaction until after bill is filed by other claimants, when.**

   The right of an adopted child of a nonresident intestate, where the adoption was made in another State, to inherit lands in this State was not impaired because the principle of comity was not invoked to obtain a recognition of the adopted child's *status* in this State until after the death of the adoptive parent, nor until after the intestate's brother had filed a bill to obtain possession of the property.  (*Post, pp.* 333, 334.)

5.  **SAME. Same. Same. Same. Same.  Foreign adopted child's right of inheritance is not impaired by his nonresidence, and the residence of the brother of the adoptive parent.**

   It is no objection to a foreign adopted child's right to inherit lands in this State from his intestate adoptive parent that the child was domiciled in the foreign State, in which he was adopted, at the time he invoked the principle of comity to sustain his right to inherit, nor because the *status* of the adoptive parent's brother as his heir in this State was immediately fixed on the date of the latter's death, since the adopted child's *status* took effect from the entry of the decree of adoption, and when recognized under the rule of comity, would be recognized as existing as of the date of its inception.  (*Post, pp.* 333-335.)

6.  **COMITY. Laws of other States opposed to our policies will not be recognized by comity.**

   This State will not, by comity, recognize the laws of any other State opposed to her own institutions or policy.  (*Post, p.* 335.)

7.  **BASTARDS. Legitimization by subsequent marriage of parents is recognized everywhere.**

   Where an illegitimate child has, by the subsequent marriage of its parents, become legitimated by virtue of the laws of the State or country where such marriage took place and the

Finley v. Brown.

parents were domiciled, it is thereafter legitimate everywhere, and entitled to all the rights flowing from that *status*, including the right to inherit. (*Post, pp.* 335-338.)

Cases cited and approved: Miller v. Miller, 91 N. Y., 315; Dayton v. Adkisson, 45 N. J. Eq., 603; Smith v. Kelly, 23 Miss., 167; Scott v. Key, 11 La. Ann., 232.

Cases cited and disapproved: Lingen v. Lingen, 45 Ala., 410; Williams v. Kimball, 35 Fla., 49; Smith v. Derr, 34 Pa., 126; Brown v. Finley, 47 South., 577; Birtwhistle v. Vardill, 7 Clarke & Finnelly, 895.

FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County. T. M. McCONNELL, Chancellor.

WATKINS & THOMPSON, for complainant.

COLEMAN & FRIERSON, for defendants.

MR. JUSTICE NEIL delivered the opinion of the Court.

The bill in the present case was filed, asserting complainant's title as brother and only heir at law of James K. P. Finley, deceased, to certain real estate in the city of Chattanooga, this State. The principal defendant was James Finley, Jr., claiming the same property as the adopted son of James K. P. Finley. A demurrer was filed to the bill, which was sustained by the chan-

cellor, and the bill dismissed. From this decree the complainant has appealed to this court, and assigned errors.

The facts stated in the bill are in substance as follows:

That the said James K. P. Finley was before his death, the owner, by purchase, of the land described in the bill; that he died on the 27th day of August, 1906, in the State of Maryland, but was a citizen and resident of the State of Georgia; that at his death he was unmarried, and without father or mother, or child or children born to him in lawful wedlock; that he left no brother or sister, or the representatives of any brother or sister, either of the whole or half blood, except complainant; that in the year 1903 he filed a petition in the superior court of Fulton county, Ga., for the adoption of defendant James Finley, Jr., formerly James Jordan, and that said decree was enrolled in that court on the 20th of February, 1903; that on the 21st of September, 1906, after the death of the said James K. P. Finley on August 27, 1906, the mother of said child married her codefendant, the said James Y. Brown, and immediately removed to the State of Alabama, and that she and her said husband, and her said child, James Finley, Jr., became citizens of Alabama from that date; that three days later, on September 24, 1906, one Courtland S. Winn, as alleged guardian of the estate of the said James Finley, Jr., filed his bill in the chancery court

at Chattanooga, alleging, in substance, among other things, that, as the result of a certain litigation had in the State of Georgia, after the death of the said James K. P. Finley, the said Winn was appointed guardian of the child, James Finley, Jr., and given charge of his estate, which was a large one, lying in Georgia, Alabama, and Tennessee; that under said proceedings the defendant Lula Jordan Brown, the mother of the child, was given custody of his person; that the said Lula Jordan Brown and her husband, James Y. Brown, had instituted certain proceedings in the county court of Hamilton county, whereby the said James Y. Brown was appointed guardian of the said child, and had assumed possession of the property in Chattanooga claimed by the child as such adopted heir of James K. P. Finley, and that this appointment was improvidently granted and in violation of the results reached in the Georgia litigation just referred to; that the said Brown and wife were citizens of Alabama at the time the said guardianship was created in the county court of Hamilton county, this State; that on the 18th day of March, 1907, the present appellees, James Y. Brown, as the stepfather of the child, and Lula J. Brown, as the mother of the said child, filed their answer to the said bill of Winn, in which they admitted their citizenship to be in Alabama, and not in Georgia or Tennessee; that a decree in the Winn Case was entered adjudging that the said James Finley, Jr., was the owner of the property now in controversy, and directing the same to be turned

122 Tenn—21

over to his said stepfather as trustee; that this decree was pronounced on the 20th day of April, 1908; that complainant was not a party to said proceedings, and had no knowledge thereof until after the decree was rendered; that the first intimation he had of these proceedings was derived from his attorneys within thirty days of the filing of the present bill; that the said James K. P. Finley was never a citizen of Tennessee from the date of his purchase of the said land until his death; that neither the said James Finley, Jr., formerly James Jordan, nor his mother, Lula Jordan Brown, nor his said stepfather, was a citizen of Tennessee at the time said land was purchased by the said James K. P. Finley, at the date of the said adoption in Georgia, or any time subsequent thereto up to the date of the filing of the original bill in this cause.

It is conceded that James K. P. Finley, and the said child, were both domiciled in Georgia at the time the adoption proceedings were consummated in that State, and that these proceedings were in accord with the law of Georgia.

The section of the Georgia Code controlling the subject of adoption is as follows:

"Any person desirous of adopting a child, so as to render it capable of inheriting his estate, may present a petition to the superior court of the county in which said child may be domiciled, setting forth the name of the father, or, if he be dead or has abandoned his family, the mother, and the consent of such father or moth-

er to the act of adoption; if the child has neither father nor mother, the consent of no person shall be necessary to said adoption. The court upon being satisfied with the truth of the facts stated in the petition, and of the fact such father or mother has notice of such application (which notice may be by publication, as required in equity cases for nonresident defendants), or, if the father, or mother, has abandoned the child, and being further satisfied that such adoption would be to the interest of the child, shall declare said child to be the adopted child of such person, and capable of inheriting his estate, and also what shall be the name of such child; thenceforward the relation between such person and the adopted child shall be, as to their legal rights and liabilities, the relation of parent and child, except that the adopted father shall never inherit from the child. To all other persons the adopted child shall stand as if no such act of adoption had been taken." Civ. Code 1895, Ga., sec. 2497.

The sections of the Tennessee Code upon the subject are as follows:

"Any person wishing to adopt another as his child shall apply by petition signed by the applicant, and setting forth the reasons therefor and the terms of said adoption." Shannon's Code, sec. 5409.

"The court, if it is satisfied with the reasons given, may sanction the adoption by decree entered upon the minutes embodying the petition and directing the terms of adoption." Id., 5410.

"The effect of such adoption, unless especially restrained by the decree, is to confer upon the person adopted all the privileges of a legitimate child to the applicant, with capacity to inherit and succeed to real and personal estate of such applicant, as heir and next of kin; but it gives to the person seeking the adoption no mutual rights of inheritance and succession, nor any interest whatever in the estate of the person adopted." Id., 5411.

The complainant insists upon the following propositions:

(1) That the *lex loci rei sitae* controls as to real estate; (2) that by this law (in the present instance, the statutes of descent and distribution of Tennessee) the *status* of complainant, as heir at law of James K. P. Finley, was immediately fixed and became vested on the 27th day of August, 1906, when the said Finley died, and that whatever title and interest he had in the land in controversy passed to complainant by operation of the said statutes of descent and distribution; (3) that the statute of adoption in the State of Georgia, and the decree of the Georgia court thereunder, by which James Finley, Jr., was adopted by James K. P. Finley, have, and could have, no extraterritorial effect, *ex proprio vigore;* (4) that the adoption statute of Georgia, and the decree of the Georgia court thereunder, could be made effective in Tennessee only under the rule of comity between the States of Tennessee and Georgia; (5) that the Georgia statute of adoption, and the decree of

the Georgia court, and the rule of comity between Ten-
nessee and Georgia, putting into effect the adoption
statute, and the decree of the latter State, are both in
conflict with the public policy of Tennessee, as declared
by its statutes of descent and distribution, fixing the
*status* of complainant as heir at law of James K. P.
Finley immediately upon his death, and vesting com-
plainant with the title to the land in controversy, and
therefore they cannot be held operative in the present
case; (6) that this rule of comity between Tennessee
and Georgia, which alone could give effect and put into
operation the said adoption statute of Georgia and the
decree of adoption of its court thereunder, were not in-
voked by the said James K. P. Finley and the said
James Finley, Jr., during the lifetime of the former, by
their removal into Tennessee, thus bringing the *status*
of the said James Finley, Jr., as fixed by said Georgia
statutes and decree into Tennessee; that the said rule
of comity was never invoked in Tennessee; that the fil-
ing of the bill above referred to by Courtland S. Winn,
and the answer of Brown and wife and the child there-
to, and the proceedings had thereunder, and the decree
of the court thereon, did not invoke in Tennessee the
rule of comity between the States of Tennessee and
Georgia, to give effect to the said adoption statutes and
decree thereunder; that if the same could be so treated,
still these proceedings were all instituted after the
*status* of complainant as heir at law of James K. P.
Finley had been fixed by his death and the title to the

land vested in the complainant; (7) that at the time the said proceedings were instituted, and up to the day of the filing of the original bill in the present case, the said James Finley, Jr., and his codefendants, were all citizens and residents of Alabama, and, therefore, incapable of invoking the law of comity between the States of Tennessee and Georgia, because they were nonresidents of the latter State; that, being residents of Alabama, a State which, through its judicial department, had declared the said James Finley, Jr., a bastard and incapable of inheriting the estate of the said James K. P. Finley, they can obtain no benefits under an alleged domiciliary *status* created by the laws of Georgia; (8) that defendants therefore acquired no rights under the said Winn bill, and that complainant being a stranger thereto was not controlled thereby, and that the same should be set aside as a cloud upon his title and his rights as the sole heir at law of his brother, James K. P. Finley, deceased.

We shall not take up these propositions in the order in which they appear above, nor, indeed, all of them, but such of them as we deem necessary to a proper decision of the case, and in such order as may seem most convenient.

We are relieved from considering the degree of strictness with which the foreign statute must be complied with, since in the present case no question is made in respect of that matter. Authorities upon this subject will be found collected in a note to *Chelak* v. *Battles,*

12 Am. and Eng. Ann. Cas., 144, and *Beatty* v. *Daven-port,* 45 Wash., 555, 88 Pac., 1109, 122 Am. St. Rep., 937, 13 Am. and Eng. Ann. Cas., 585, and note on page 587.   We are likewise relieved from considering the question whether both the adoptive father and the adopted child must be really domiciled in the foreign State at the time the adoption is made, or whether temporary residence will be sufficient.   There seems to be some diversity in the authorities upon this subject. *Foster* v. *Waterman,* 124 Mass., 594; *Wolfe's Appeal* (Pa.), 13 Atl., 760; *Van Matre* v. *Sankey,* 148 Ill., 536, 36 N. E., 628, 23 L. R. A., 665, 39 Am. St. Rep., 196. And see *Renz* v. *Drury,* 57 Kan., 84, 45 Pac., 71.   In the present case there is no question that both parties were domiciled in Georgia at the time the adoption was had.

There is no doubt whatever, under the authorities in this country, that a child who, in a foreign State in which both it and the adoptive father are domiciled, has acquired under the laws of that State the *status* of child by adoption, must, under the comity of States, receive recognition of its *status* as child in every other State having substantially similar adoption laws, and must be held capable of succeeding to real property in accordance with the laws of the State where the property lies, if adopted children are capable of inheriting under the local law of the latter State.   *Ross* v. *Ross,* 129 Mass., 246, 37 Am. Rep., 321; *Gray* v. *Holmes,* 57 Kan., 217, 45 Pac., 596, 33 L. R. A., 207; *Van Matre*

v. *Sankey,* supra; *Melvin* v. *Martin,* 18 R. I., 650, 30
Atl., 467; *McColpin* v. *McColpin* (Tex. Civ. App.), 77
S. W., 238; *Woodward's Appeal,* 81 Conn., 167, 168,
70 Atl., 453; *Shick* v. *Howe,* 137 Iowa, 249, 114 N. W.,
916, 14 L. R. A. (N. S.), 980.

It will not be amiss to give some excerpts from two
or three of these authorities.

The leading case is *Ross* v. *Ross.* In that case it is
said:

"It is a general principle that the *status* or condi-
tion of a person, the relation in which he stands to an-
other person, and by which he is qualified or made cap-
able to take certain rights in that other's property, is
fixed by the law of the domicile, and that this *status*
and capacity are to be recognized and upheld in every
other State, so far as they are not inconsistent with its
own laws and policy. Subject to this limitation, upon
the death of any man, the *status* of those who claim suc-
cession or inheritance in his estate is to be ascertained
by the law under which that *status* was acquired. His
personal property is, indeed, to be distributed accord-
ing to the law of his domicile at the time of his death,
and his real estate descends according to the law of
the place in which it is situated; but, in either case,
it is according to those provisions of that law which
regulates the succession or the inheritance of persons
having a *status.* . . . A person, for instance, who
has the *status* of child of another person in the country
of his domicile has the same *status* here, and as such

Finley v. Brown.

takes such share of the father's personal property as the law of the domicile gives him, and such share of his real estate here as a child takes by the laws of this commonwealth, unless excluded by some positive rule of our law.    Inheritance is governed by the *lex rei sitae;* but legitimacy is to be ascertained by the *lex domicilii.* If a man domiciled in England has two legitimate sons there and dies intestate, owning land in this commonwealth, both sons have the *status* of legitimate children here; but, by virtue of our statute of descents, the land descends to them equally, and not to the eldest son alone, as by the law of England."

In *Van Matre* v. *Sankey,* supra, it is said:

"The decree of adoption was a declaration by competent authority operative to change her *status,* and *ipso facto* to render her that which she was declared to be —the heir at law of Samuel Sankey—and capable of inheriting from him in all respects as if she had been his child born in lawful wedlock.    The statute under which the adoption proceedings were had provides that the child shall be decreed to take the name of the adopting parents, and have all the rights of a child and heir of such adopting parents, and be subject to the duties of such child.    The decree, by force of this statute establishing, *eo instanti* its rendition, the relation of parent and child, imposed upon the parties the reciprocal duties and obligations of that relation, and impressed upon an invested  the child with the rights and qualifications of a child and heir at law of Samuel Sankey.

This we understand to be the construction of the statute by the courts of that State (Pennsylvania). The *status* of appellee, having been established under, and existing by virtue of, the *lex domicilii*, is to be recognized and upheld in every other State, unless such *status*, or the rights flowing therefrom are inconsistent with, or opposed to, the laws and policy of the State where it is sought to be availed of."

The principle has been recognized in two cases: *Woodward* v. *Woodward*, 87 Tenn. (3 Pickle), 644, 11 S. W., 892, and *Memphis Trust Co.* v. *Blessing*, 103 Tenn. (19 Pickle), 237, 58 S. W., 115. In the first of these cases it was held that a minor domiciled in another State, and emancipated under its laws from all disabilities of infancy, could recover and receive, in the same manner as adults, personal funds to which she was entitled by the law of her domicile, held for her by a guardian appointed and resident in this State, and administered under our laws; that the *lex domicilii* would control as to the ward's capacity. In the second case it was held a minor, domiciled in another State, by the laws of which she was emancipated from all the disabilities of infancy, was entitled to receive and recover in the same manner as an adult her real estate, as well as personal funds, having a *situs* and being at the time under control and possession of a guardian appointed and resident in this State.

An important qualification of the general doctrine is to be found in *Keegan* v. *Geraghty*, 101 Ill., 26, 41.

This qualification is that in recognizing the foreign adoption, States acting by comity will not permit a statute of a foreign State to extend any further than the local statute upon the same subject, or to confer any other rights; thus pursuing the principle that the *lex loci reisitae* must control in the disposition of real estate. So, in that case, inheritance through collaterals was not permitted, although it was permitted by the foreign statute; such collateral inheritance not being allowable under the local statute of adoption as construed by the court. To the same effect, see *Van Matre* v. *Sankey,* supra. There is authority, also, to the effect that, where the statute of adoption of the State recognizing by comity the foreign adoption is broader than the rights acquired under the foreign statute, such rights will not be enlarged, so as to be commensurate with those granted by the adopting statute of the State so acting by comity. *In re Sunderland's Estate,* 60 Iowa, 732, 13 N. W., 655.

The recognition of the *status* acquired by a foreign adoption, when confined as above indicated, cannot be held as a breach of the policy of that State in which the land lies, where such State has a law of adoption; nor can it be held a violation of the statutes of descent.

Upon this subject it is said, in *Ross* v. *Ross,* supra: "But this section [referring to the statute of descents] must be understood as merely laying down general rules of inheritance, and not as completely and accurately defining how the *status* is to be created which gives the capacity to inherit. It does not undertake to prescribe

who shall be considered a child, or a widow, or a husband, or what is necessary to constitute the legal relation of husband and wife, or of parent and child. Those requisites must be sought elsewhere. The words 'children' and 'child,' for instance, in the first clause, 'issue,' in the phrase 'if he leaves no issue,' in subsequent clauses, and 'kindred,' in the last two clauses, of this section, clearly include a child made legitimate by the marriage of its parents, and acknowledged by the father after his birth, under section 4 of the same chapter, or a child adopted under the provisions of chapter 110 of the General Statutes, or chapter 310 of the statute of 1871." To the same effect are *Fosburgh* v. *Rogers,* 114 Mo., 122, 21 S. W., 82, 19 L. R. A., 201, 205; *Re Wardell,* 57 Cal., 484, and *Power* v. *Hafley,* 85 Ky., 671, 4 S. W., 683. And see *Markover* v. *Krauss,* 132 Ind., 294, 31 N. E., 1047, 17 L. R. A., 806.

Our own statute of descents (Shannon's Code, section 4163 et seq.) provides that the land of an intestate shall be inherited "by all the sons and daughters of the deceased, to be divided amongst them equally;" and also if the estate was acquired by the intestate, and he died "without issue," his lands shall be inherited "by his brothers and sisters of the whole or half blood, born before his death or afterwards, to be divided amongst them equally." These provisions must be construed in connection with our statute of adoption, by which it is provided that the adopted child shall have "all the privileges of a legitimate child to the applicant, with capac-

ity to inherit and succeed to the real and personal estate of such applicant, as heir and next of kin." So, when a foreign adoption is recognized by comity, the same relation is created; at least to the extent that such *status* is fixed by the foreign statues, unless the powers purporting to be given thereby are greater than those conferred by our own statute. Each case, as above indicated, will be confined to the terms of our statute, which is quoted in full supra.

We do not think that any weight should be given to the contention that the adopted child should not be accorded superior rights to the complainant in the present case, because the principle of comity was not invoked until after the death of James K. P. Finley, and after the complainant had filed his bill in the present case, nor to the contention that the child cannot claim the benefits of the principle of comity because, when the present litigation began, he was domiciled in Alabama, nor to the contention that the *status* of complainant as heir at law of James K. P. Finley was immediately fixed and became vested on the 27th day of August, 1906, when the said Finley died. If the assumption underlying at least one of these contentions was sound, there never could be a recognition, by comity, of heirship in respect of one who had been adopted in a foreign State, nor, indeed, of any one occupying the *status* of a legitimate child in a foreign State, since the legitimacy in general depends upon marriage, and recognition of laws affecting this relation de-

pends, also, upon the principle of comity.  The truth is that the relation of parent and child is established by the decree of adoption in a foreign State, immediately upon the entry of such decree.  It is not more necessary that the relationship thus created should be recognized in a foreign State before the death of the adoptive parent than it is that the natural relationship of the child residing in a foreign State should be discovered and recognized.  Under the rule of comity necessarily the *status* of child is recognized as existing as of the date of its inception.  It is a mistake, therefore, to say that if the rule were not invoked prior to the death of the adoptive parent, or before the child became domiciled in the State where the land lies, that one who would be heir under the local law, in case there were no child, would, by a kind of automatic intervention, take the land as heir at law.  We do not find such suggestion in any of the cases, and it is manifestly unsound on principle.  It is true that several of the cases mention the fact that the child had become domiciled in the State since the death of the adoptive parent, and was invoking the aid of the court; but none of them turn on that point.  Indeed, in *Van Matre* v. *Sankey,* it appeared that both the child and the adoptive parent resided in California at the death of the latter.  In *Shick* v. *Howe,* it did not appear that the child had become domiciled in Iowa.  It did appear that the adoptive father was dead when the suit was brought.  In *Gray* v. *Holmes,* it appeared that the adopted child had died, and recognition was given to

her child, and it does not appear that the latter had removed into the State of Kansas.

It is insisted that recognition of a foreign adoption will tend to make land titles uncertain in this State, since it may happen, after titles have seemed to vest here in persons apparently heirs at law, and these lands may have been sold by such persons to other persons, a foreign adoption may be discovered and great confusion and loss ensue. The same results might follow on the discovery of a child born of a marriage in a foreign State not previously known here. There is nothing in the authorities to indicate that any practical inconvenience has arisen from either of these sources.

It is insisted that by recognizing a foreign adoption the law of this State would be subordinated to the laws of another State. There is nothing in this view, because this State will not, by comity, recognize the laws of any other State opposed to our own institutions or policy. We have already shown that there is no conflict between adoption laws and the statutes of descent.

There is another class of cases closely assimilated to those arising under heirship by adoption. These cases depend upon the principle that when an illegitimate child has, by the subsequent marriage of its parents, become legitimated by virtue of the laws of the State or country where such marriage took place, and the parents were domiciled, it is thereafter legitimate everywhere, and entitled to all the rights flowing from that *status*, including the right to inherit. *Miller* v. *Miller,*

91 N. Y., 315, 43 Am. Rep., 669; *Dayton* v. *Adkisson*, 45 N. J. Eq., 603, 17 Atl., 964, 4 L. R. A., 488, 14 Am. St. Rep., 763; *Smith* v. *Kelly*, 23 Miss., 167, 55 Am. Dec., 87; *Scott* v. *Key*, 11 La. Ann., 232. And see 3 Am. and Eng. Enc. of Law, p. 897; Story on Conflict of Laws, p. 173.

The only authorities we have knowledge of which are in direct conflict with the rules thus stated are *Lingen* v. *Lingen*, 45 Ala., 410, *Williams* v. *Kimball*, 35 Fla., 49, 16 South., 783, 26 L. R. A., 746, 48 Am. St. Rep., 238, and *Smith* v. *Derr*, 34 Pa., 126, 75 Am. Dec., 641. All of these cases, however, are based upon the celebrated English case of *Birtwhistle* v. *Vardill*, 7 Clarke & Finnelly, 895, in which it was held that a child born in Scotland of parents domiciled there, who, at the time of his birth, were not married, but who afterwards intermarried in Scotland, there being no lawful impediment to their marriage, either at the time of his birth or afterwards, though legitimate by the law of Scotland, could not take, as heir, the lands of his father in England. This latter decision was based upon what is called the "statute of Merton," which arose out of certain facts peculiar to the history of England, in connection with certain dependencies which it had at that time over sea—particularly Normandy, Aquitaine, and Anjou. The rule in those provinces and elsewhere on the Continent was that the subsequent marriage of the parents of an illegitimate child would make the child legiti-

mate, and hence capable of inheriting. The question was constantly arising in the ecclesiastical court, and seems to have produced considerable uncertainty as to the true rule that should obtain. The matter was submitted by the bishops to the Parliament, with the request that the rule making the *antenatus* legitimate by the subsequent marriage of its parents should be declared as the law of England. The Parliament refused, and, on the contrary, declared that it was, and always had been, the law of England that none were legitimate heirs except those born in lawful wedlock. This declaratory statute had thus arisen, for the purpose of solving, so to speak, the very matter in doubt, and was regarded in the case referred to as settling it, and placing it beyond any question of comity. It was, as said by Lord Chief Justice Tindal, in the case just referred to, a matter of positive law, and a rule of property inhering in the lands, as it were. In other words, the statute was passed to cover precisely the question mooted. Of course, after that, the matter of comity was out of consideration. So strong, however, was the current of authority apparently against the courts of England, both on the Continent and in this country, that the matter was held under debate twelve years, and was repeatedly tried. The subject was illuminated by very learned arguments of counsel reproduced in the last report, and also by observations of the judges, particularly Lord Brougham, who criticised, at some length, the grounds on which the Lord Chief Justice placed his decision; but the latter was finally adopted by the House, as is seen by

122 Tenn—22

the observations of the Lord Chancellor, in his closing remarks at the foot of the case, and in a note of the result immediately following.

The supreme court of Alabama, in the recent case of *James Y. Brown* v. *Alex Finley,* 47 South., 577, 21 L. R. A. (N. S.), 679, involving that portion of James K. P. Finley's estate lying in Alabama, seemed to recognize that the weight of authority was against *Lingen* v. *Lingen,* supra, but said it had become a rule of property in that State, and followed it. *Williams* v. *Kimball,* supra, likewise followed the English case, and based its decision upon the statute of Merton. So of *Smith* v. *Derr,* supra; but the rule was afterwards changed in Pennsylvania. The English rules of succession do not apply in this State. The matter is governed by our own statutes, and there is nothing in the way of our recognizing the almost universal rule of comity, which gives credit to personal *status* acquired under foreign laws.

There are other cases cited by complainant (*Barnum* v. *Barnum,* 42 Md., 251; *Stoltz* v. *Doering,* 112 Ill., 234; *Sneed* v. *Ewing,* 5 J. J. Marsh, [Ky.], 460, 22 Am. Dec., 41; *Leonard* v. *Braswell,* 99 Ky., 528, 36 S. W., 684, 36 L. R. A., 707; *McCreery* v. *Davis,* 44 S. C., 195, 22 S. E., 178, 28 L. R. A., 655, 51 Am. St. Rep., 794); but they do not very closely bear upon the controversy, and we need not lengthen this opinion by a detailed examination of them.

It results that we find no error in the decree of the chancellor, and it must be affirmed.