VICTORIA S. CRAFT v. JOE BLASS, et al.

Western Section. June 22, 1928.

Petition for Certiorari denied by Supreme Court, January 12, 1929.

Randolph & Randolph, Ewing, King & King and Knipmeyer & Dixon, all of Memphis, for appellant.

Stickley & Fitzhugh and S. M. Neely, all of Memphis, for appellee.

HEISKELL, J. The subject-matter of this suit is the estate of Rachel Craft, deceased, consisting of valuable parcels of real property in the city of Memphis. Appellee, complainant in the court below, predicates her claim on the will of Rachel Craft, formerly known as Rachel Seelig, dated January 14, 1908. Appellants, defendants below, are the heirs of said Rachel Craft, deceased. Rachel Craft, a widow, departed this life on April 4, 1927; and the alleged will of January 14, 1908 was admitted to probate by the Probate Court of Shelby county on April 11, 1927.

By her will, Rachel Craft, or Seelig, bequeathed to appellee, then known as Victoria Schoenberger, the sum of $350, and devised and bequeathed all of the residue of the estate, real and personal, to her "friend," William R. Craft.

On April 7, 1911, Rachel Seelig and said William R. Craft intermarried. Appellee, at the time, was making her abode with Rachel Seelig; and on July 26, 1921, said William R. Craft by a proceeding in the probate court of Shelby county, in which proceeding Rachel Craft did not join, adopted appellee as his child, and by the same proceeding her name became Victoria Schoenberger Craft. Appellee, at the time of the adoption, was between thirty and forty years of age. William R. Craft died on January 4, 1924, and, as stated, Rachel Craft died on April 4, 1927. William R. Craft, by his last will, in actual effect, gave his entire estate, consisting of valuable real property, to appellee, Victoria Schoenberger Craft. Rachel Craft, the widow, dissented from the will, and, after some controversy, appellee and Rachel Craft compromised their differences and executed a partition deed by which they divided the William R. Craft real estate, and settled rights and interests in other properties. Shortly thereafter, in a settlement of other matters, Rachel Craft signed another document, by which, according to its purport, Rachel Craft, purchasing appellee's one-half interest in House No. 1515 Madison avenue for $3000, agreed to devise the entire interest in said property to appellee. Dissension over the real property being thus composed, the only actual litigation between the parties was a replevin suit instituted by appellee to recover from Rachel Craft possession of an automobile, in which litigation appellee was successful.

Rachel Craft died without issue, as did William R. Craft; but the Chancellor held that appellee, Victoria Schoenberger Craft, is "issue" of William R. Craft by virtue of the aforementioned adoption proceeding; and as such "issue," by force of the "lapsed legacy statute" took, not merely the legacy of $350 given to her under the alleged will of Rachel Craft, but also the entire remainder of the estate under the devise and bequest to William R. Craft, who predeceased the testatrix.

The Chancellor also decreed that complainant was entitled to recover No. 1515 Madison avenue under the said contract of Rachel Craft to devise same to complainant.

Defendants, who are brother, sister, nephews and niece, only heirs of Rachel Craft, have appealed and assigned errors.

As will be gathered from the foregoing statement the suit involves:

First: The right of appellee, Victoria S. Craft, the adopted daughter of William R. Craft, the devisee in the will of Rachel Craft, to take the property of the testatrix, Rachel Craft, under the Lapse Legacy and Devise Statutes of this State, the said William R. Craft having predeceased the testatrix.

Second: The right of appellee, Victoria S. Craft, to have specifically performed and enforced a written contract between herself and the testatrix, Rachel Craft, of date August 4, 1925, by the terms of which said Rachel Craft, for a valuable consideration, agreed to will to appellee a certain house and lot in the city of Memphis, known as 1515 Madison avenue.

These were the contentions presented by the complainants' bill. The appellants who were defendants in the court below, interposed demurrers to the original bill, and at the same time filed their answers. The sole question presented by the demurrers in this case is: "What construction shall be given the word "issue," in sections 2938 and 4171, Shannon's Annotated Code, when considered in connection with the Statute of Adoption, section 5409, et seq., Shannon's Annotated Code?

These demurrers were overruled by the Chancellor, who, after a thorough investigation, held in a written opinion "that appellee occupied the legal status of issue of the said William R. Craft, the devisee in said will, and as such was entitled to the property left by the said testatrix, Rachel Craft, under and by virtue of said Lapse Legacy and Devise Statutes."

The answers of defendants admitted for the most part the allegations of the bill, but contained in substance these averments:

1. That appellee, Victoria Craft, at the time she was adopted by William R. Craft, was more than twenty-one years of age.

2. That appellee is an alien and not a citizen of the United States.

3. That the contract between appellee and Rachel Craft, deceased, of date August 4, 1925, and filed as an exhibit to the original bill, was procured by complainant's fraud, covin and guile, and by threat and duress.

4. That said contract was without consideration.

5. There is also an allegation with reference to appellee acquiring the property of her father, William R. Craft, under and by virtue of the terms of his will.

The answer of the appellants, Joe Blass and Minnie Friedlander, was filed as a cross-bill against Dr. William R. Cox, whom the original bill shows to be the owner of a one-third undivided interest in and to a certain piece of real estate described in subsection 6, paragraph 8 of the original bill, the other interest being owned by appellee, Victoria Craft, and the testatrix, Rachel Craft. The complainant, Victoria S. Craft was not made a party-defendant to the cross-bill. The cross-bill alleges that said Dr. William R. Cox paid nothing whatever for his interest in said property, but secured the same through fraud, covin and guile. It prayed that the interest of said William A. Cox in said property be divested out of him and vested in the heirs of said Rachel Craft, deceased.

The defendant, Dr. William R. Cox, through his attorneys, filed a demurrer to this cross-bill, which demurrer was by the court sustained and the said cross-bill dismissed. .

The first and second assignments of error raise the question that it was error to hold that the complainant, Victoria Craft, the adopted daughter of William R. Craft who was the devisee under the will of Rachel Craft, occupied toward said devisee the relation of "issue" within the meaning of the Lapse Legacy and Devise Statutes, when considered in connection with the statutes of adoption. There are certain subsidiary questions raised which will be noticed after disposing of the main question.

The Lapse Legacy and Devise Statutes, as found in Shannon's Annotated Code of Tennessee, are as follows:

> "Section 3928. Whenever a devisee, or legatee dies before the testator, or is dead at the making of the will, leaving issue who survives the testator, said issue shall take the estate devised or bequeathed, as the devisee or legatee would have done, had he survived the testator, unless a different disposition thereof is made or required by the will." (Acts 1851-52, ch. 180, sec. 3.)

> "Section 4171. When any person to whom an estate, real or personal, is devised or bequeathed, dies before the testator, leaving issue that shall be living at the death of the testator, the

devise or legacy shall not lapse, but shall take effect, as if the death of the devisee or legatee had happened immediately after the death of the testator; and the real estate devised, in such case, shall be vested in the issue of such deceased devisee, in the same manner as it would have vested in the original devisee, unless a contrary intention shall appear in the will." (Acts 1841-42, ch. 171, sec. 3.)

The adoption statute, Act of 1852, Code 5409-11, after conferring jurisdiction to authorize adoptions says:

"Such act of adoption shall confer upon such child or children the rights of a child or children, as if they were born the child or children of such parent, and capable of inheriting or succeeding to the personal or real estate of the parent as heir or next of kin, but shall confer no rights upon the person making the adoption to inherit or succeed to the personal or real estate of the child adopted, nor give him any right or interest in the estate of such child." (Acts 1851-2, ch. 338, p. 618.)

As incorporated into, and expressed in, the Code of 1858, this adoption act of 1852 is expressed as follows:

"The effect of such adoption, unless especially restrained by the decree, is to confer upon the person adopted all the privileges of a legitimate child to the applicant, with capacity to inherit and succeed to the real and personal estate of such applicant as heir and next of kin; but it gives to the person seeking the adoption no mutual rights of inheritance of succession, nor any interest whatever in the estate of the person adopted." Code (1858), sec. 3645; Shannon's Code. sec. 5411.

It will be observed that the original Act of 1852 conferred upon the adopted person the rights of a child born the child of the adoptive parent, and capable of inheriting his estate "as heir and next of kin;" and as expressed in the Code of 1858, the effect of the adoption is to confer upon the adopted person all the privileges of a legitimate child, with capacity to inherit the estate of the adoptive parent, as heir and next of kin.

Adoption is the act by which a person takes the child of another into his family and treats him as his own; a judicial act creating between two persons certain relations, purely civil, of paternity and filiation. Black's Law Dictionary, p. 42; 1 Bouvier's Law Dictionary, p. 104.

It is an act by which relations of paternity and affiliation are recognized as legally existing between persons, not so related by nature. Morrison v. Estate of Sessions, 70 Mich., 397, 14 Am. St. Rep., 500, 506.

"Adoption" means an assumption of the relationship of parent and child, with all the consequences of that relationship. State v. Thompson, 13 La. Ann., 515, 518, 1 W. & P., 206.

As said by Mr. Maine in his work on Ancient Law:

"We must look upon the family as constantly enlarged by the adoption of strangers within its circle, and we must try to regard the fiction of adoption as so closely simulating the reality of kinship, that neither law nor opinion makes the slightest difference between the real and the adoptive connection." (14 Am. St. Rep., 507.)

Our Supreme Court, in the case of Finley v. Brown, 122 Tenn., 316, held an adopted child "issue" within the meaning of the intestate statute, as found in section 4163, subsection 2, Shannon's Code, which reads as follows:

"(2) Where an estate was acquired by intestate dying without issue, if the estate was acquired by the intestate and he died without issue, his lands shall be inherited (a) by his brothers and sisters of the whole blood," etc.

The contention was made in this case that the adopted child was not "issue" within the meaning of that act, but the court said: "These provisions must be construed in connection with our Statute of Adoption, by which it is provided that the adopted child shall have 'all the privileges of a legitimate child to the applicant,' with capacity to inherit and succeed to the real and personal estate of such applicant, as heir and next of kin.' "

In the case of Meriwether v. Fourth & First B. & T. Co., 153 Tenn., 696, our Supreme Court went a step further than it did in the case of Finley v. Brown, and held that the child of an adopted child occupied the relation or status of "issue" to the adoptive parent. In other words, that the children of the adopted child were grandchildren of the adoptive parent. In this case the court, in construing the Adoption Statute, uses the following language, which is peculiarly apt in the case at bar:

" 'The manifest intention of our adoption statutes was to make the relation between the adopting parent and the adopted child precisely what it would have been had there been a lawful and natural relation of parent and child; and, while the statute must be strictly construed, its purpose cannot be destroyed by subtle and refined reasoning.'

"The statutes of adoption and of descent and distribution must be read together. Helmes v. Elliott, 89 Tenn., 446, 14 S. W., 930, 10 L. R. A., 535; Finley v. Brown, 122 Tenn., 332, 123 S. W., 359, 25 L. R. A. (N. S.), 1285; Redmond v. Wardrep, 149 Tenn., 35, 257 S. W., 394; Power v. Hafley, 85 Ky.,

671, 4 S. W., 683; Scott v. Scott (D. C.), 247 Fed. Rep., 976 (Idaho); In re Walworth, 85 Vt., 322, 82 A., 7, 37 L. R. A. (N. S.), 849, Ann Cas., 1914C, 1223.

"It will be observed that the effect of such adoption is to confer upon the person adopted all the privileges of a legitimate child.

"One of the privileges of a legitimate child is to inherit the land and share in the distribution of the personal estate of his parent, and, where he predeceases his parent, to be succeeded in the inheritance and distribution of the estate by his children. Sections 4163 and 4172 of Shannon's Annotated Code.

"The adopted child is given the legal status of a legitimate natural child."

It will be observed that our Supreme Court has held in unmistakable terms, that the adopted child is given the legal status of a legitimate natural child.

It would be difficult to make language any stronger than that used in the Meriwether case. It will be observed that in these cases above quoted, our Supreme Court was not dealing with the words "bodily heirs" or "heirs of the body," which have an entirely different meaning in law than the word "issue."

Mr. Underhill, in his Law of Wills, Vol. 2, sec. 550, in discussing the status of an adopted child, says:

"It is elsewhere explained that the word 'issue' and the word 'descendants' are synonymous in their meaning. Hence where by statute the legal status of a descendant has been conferred upon an adopted child he may take under a devise to 'issue.' And he is entitled, under a statute of this character, to take as remainderman the estate in which the adopting mother had a life interest, with a remainder in fee expressly given to her lawful issue. But statutes of this description, being in derogation of the common law, are always to be strictly construed, and an adopted child would not thereby be able to take under a devise to the heirs of the body; as these words are words of procreation, and not, in their common-law sense coextensive in meaning with descendants (115 Mass., 262, 75 Pa. St., 81)." Sewall v. Roberts, 115 Mass., 262.

The adoption statute of Massachusetts provides that:

"A child so adopted shall be deemed, for the purposes of inheritance by such child and all other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption, the same as if he had been born to them in lawful wedlock; except that he shall not be capable of taking property expressly limited to the heirs

of the body or bodies of the parents by adoption, nor property from the lineal or collateral kindred of such parents by right of representation.''

In this case ''A'' made a voluntary conveyance of all his property to a trust company in trust to pay the income to him for life. In the event of his death, without leaving any issue the principal to go to A's mother. In 1865 ''A'' subsequently adopted a child and died in 1872, leaving no other child. The court in holding that the adopted child was entitled to the property said:

''The adopted child, in this case, therefore, in construing her father's settlement must be regarded in the light of a child born in lawful wedlock, unless the property disposed of by the settlement falls within one of the exceptions. It is true that if she takes under the settlement, the property does not come to her by inheritance, but it comes to her as one of the legal consequences and incidents of the natural relation of parents and children. Does it fall within either exception of the statute? It cannot be claimed that it falls within the last exception as property from the kindred of the parents by right of representation. The other exception is that she cannot take property 'expressly limited to the heirs of the body or bodies of the parents by adoption.'

''The term 'heir of the body' is well established technical term, with which the words 'children' or 'issue' or 'lawful issue' are not synonymous.

''The rule of construction enjoined by our statutes is, that technical words or phrases which have acquired a peculiar and appropriate meaning in law, shall be construed and understood according to such peculiar and appropriate meaning, unless it is inconsistent with the manifest intent of the legislature or repugnant to the context.

''The language of the statute shows that the legislature intended to use the phrase 'heirs of the body or bodies' in its primary technical sense. The terms of the settlement above cited, do not limit the estate expressly 'to the heirs of the body' of Roberts; and the terms therein used 'child or children,' 'issue' and 'lawful issue' are not equivalent terms and do not lead to the same construction and legal result as would be reached if the estate was in the direct words limited to the heirs of his body. We are therefore of the opinion that the case does not fall within either of the exceptions of the statute, and that as to the property in question, Ada Parker Roberts is to be deemed the child of Robert Roberts the same as if she had been born to him in lawful wedlock. It follows that in the

contingency which has happened, she as such child is entitled to the whole of the principal fund."

A well-considered and much cited case is Warren v. Prescott, decided by the Supreme Court of Maine, and reported in 17 L. R. A., p. 435. In this case the court had before it the question as to whether or not an adopted child was a "lineal descendant" of the devisee, as used in the Lapse Legacy Statute of that State. In this case the court said:

"The question is whether an adopted child can take a legacy given to one of its adopting parents, and thus prevent the legacy from lapsing, when the legatee dies before the testator. There is no doubt that a child born in lawful wedlock can so take. But, in this particular does an adopted child possess the same right? We think so. With two exceptions, neither of which is applicable to such a case, an adopted child becomes 'to all intents and purposes the child of his adopters, the same as if born to them in lawful wedlock.' Such is the express language of our statute in relation to the adoption of children. Rev. Stat., ch. 67, sec. 35.

"The exceptions are: First, that an adopted child shall not inherit property expressly limited to the heirs of the body of the adopters; and secondly, that an adopted child shall not inherit property from their (the adopters') lineal or collateral kindred by right of representation. Rev. Stat., ch. 67, sec. 35."

The Lapse Legacy Statute involved in this case is as follows:

"When a relative of the testator, having a devise of real or personal estate, dies before the testator leaving lineal descendants, they take such estate as would have been taken by such deceased relative if he had survived." See, also, Clarke v. Clarke, 76 N. H., 551; Goodwin v. Culby, 64 N. Y., 766; Morse v. Hayden, 82 Me., 227; In re Estate of Newman, 75 Cal., 213; Cherry v. Mitchell (Ky.), 55 S. W., 689; Buckley v. Frasier, 153 Mass., 525; Hartwell v. Teft (R. I.), 34 L. R. A., 500; 1 Underhill on Law of Wills, sec. 338.

It seems unnecessary to cite other authority to support the holding of the court below. Nor does the court feel called upon to distinguish the numerous cases cited by counsel for appellants as holding the contrary. The cases are readily distinguished from those cited above. If any should be found not clearly distinguishable, they would be out of line with the current of authority to which our Supreme Court is committed. However, it will be found that the cases cited for appellant go off on some different principle from the instant case. The Maine case of Warren v. Prescott, supra, in the exceptions stated, suggests some of these distinctions which

do not in the least conflict with or weaken the force of the authorities and argument relied on to support the decree of the Chancellor.

Helms v. Elliott, 89 Tenn., 446, is cited for appellants, but that case merely holds that the adopted child does not share with a natural child in the estate of a natural grandson of the adoptive parent. This distinction runs through all the cases, that while the adopted child becomes in legal effect the issue of the adopting parent, he does not become a blood relation of all the kin of the adopting parent. In other words, one adopts a child for himself not for anybody else. We shall not further discuss this line of cases to show that they have no application. It could not be argued if Victoria Craft had been a natural child of William R. Craft, that the statute did not apply. By adoption, she is in regard to taking from him, just the same as a child born to him.

But it is said in the assignment that this holding contravenes the plain purpose and intent of the testatrix because she gave to complainant a legacy of $350. Suppose Victoria had been the natural legitimate child of William R. Craft and the legacy had been left to her, would that prevent the lapse legacy law from taking effect? Certainly not. The adopted child can be substituted in the question and the answer must be the same. There is no force in the other contentions against the construction given, drawn from the agreement to devise the Madison avenue property. This was an agreement that might have been made with anyone and could have no effect upon Victoria's inheriting from William R. Craft. The last objection under the first assignment, we take it, depends upon the testimony excluded by the Chancellor. The fallacy in these objections depends upon the fact that defendants are not willing to admit that Victoria must be considered the child of her adoptive father and as taking through him and not as the devisee of Rachel Craft.

The third assignment is that the Chancellor erred in sustaining the demurrer of W. R. Cox to the cross-bill of Joe Blass and Minnie Friedlander. This assignment is not in accordance with the rules of the court in that it does not state why or wherein the action of the court below was erroneous. The Chancellor held the cross-bill premature. The brief simply says it was not premature and cites 1 Corpus Juris, 1150. We do not see that it is referred to in the argument. This cross-bill does not make the complainant Victoria, a defendant, but only W. R. Cox. It claims that Cox obtained by fraud a one-third interest in a certain lot. The complainant does not claim this third interest and therefore, is not concerned with the controversy. It is not germane to the suit between complainant and defendants. A controversy wholly between cross-complain-

ant and a third party cannot be brought in by cross-bill. Gibson Suits in Chy., secs. 725-728 and 737. Besides, if this was error it cannot affect the decree in favor of complainant.

The fourth assignment is that it was error to hold the contract to devise 1515 Madison, enforceable. No reason is set out and besides there is no proof by defendants to sustain the charge of fraud. The contract is well made out and the authorities show her right to the decree in this regard. Pritchard on Wills, sec. 307; Stone v. Manning, 103 Tenn., 232; Green v. Broyles, 3 Humph., 167.

The fifth assignment goes to a question of fact and does not refer to the evidence. We cannot consider this and besides it seems to be immaterial.

The sixth assignment is that it was error for the court to hold that certain testimony by Mrs. Friedlander and Joe Blass as to statements made by Rachel Craft regarding outrages perpetrated on her by complainant is unbelievable. Here again the testimony is not referred to and besides the Chancellor held the only testimony relied on to impeach the contract in regard to the devise of 1515 Madison, being statements said to have been made by Rachel Craft, was incompetent, and in this there was no error. Ricketts v. Ricketts, 151 Tenn., 525, and cases cited.

The seventh assignment contends that the adoption of complainant was void because of her age and because she was an unnaturalized alien.

Under our statute of adoption there is no limitation on the age of the person to be adopted. The word "child" as used in the statute refers to the relationship the party is to bear to the adopter and does not refer to the age of the person to be adopted. See sec 5409, Shannon's Anno. Code; Baskette v. Streight, 106 Tenn., 549; Sheffield v. Franklin, 151 Ala., 492; Moran v. Moran, 151 Mo., 555-558; Collamore v. Learned, 171 Mass. 99; Succession of Caldwell, 114 La., 195, 38 So. 140.

The language of our statute is "any person wishing to adopt another as his child." This is commented on in Baskette v. Streight, 106 Tenn., 554. The State of Alabama has an adoption statute similar to ours except that it provides that a person may adopt a "child." The Supreme Court of that State held that a person over twenty-one could be adopted. Sheffield v. Franklin, 151 Ala., 492; 12 L. R. A. (N. S.), 885, citing Moran v. Moran, 151 Mo., 555, and cases from Indiana and Massachusetts.

Counsel for appellant relies on a Rhode Island case, In re Moore, 14 R. I., 38, but Baskette v. Streight, calls attention to the Rhode Island statute as authorizing the adoption of a minor only.

The fact that the person adopted is an alien does not affect the legality of such adoption.

This question came before the Supreme Court of Arizona for determination in the case of Rizo v. Burruel, 19 L. R. A., 823. Both parties were citizens of Mexico. The court holding the adoption legal said:

"It is claimed by appellant that inasmuch as he, his child, and the petitioners to adopt, are all citizens of Mexico, the court has no jurisdiction, under chapter 17, title 6, Civ. Code 1913, entitled 'Adoption,' to decree an adoption; it being contended that the provisions of said chapter do not apply to alien residents in Arizona. We find no such limitation expressed in said chapter, nor are we aware of any good reason why the power of the courts of the State should not extend to the protection, care, and disposition of minor children of foreign birth as well as native born."

The remaining assignments are all covered by what has been said under other assignments.

All assignments are overruled and the decree of the lower court is affirmed. Defendants and surety on appeal bond will pay costs of appeal.

Owen and Senter, JJ., concur.