VASON & DAVIS; SMITH & JONES ; W. A. HAWKINS, for plaintiffs in error.

HINES & HOBBS, for defendants.

---

JOHN W. PACE, administrator, *et al.*, plaintiffs in error, *vs.* CHARLES A. KLINK, administrator, *et al.*, defendants in error.

By an act of the Legislature of this state, passed in 1850, the name of Mathew R. Brown, of the county of Muscogee, was "changed to that of Mathew Downer, and it was enacted that he be entitled to all the rights and privileges that he would have been entitled to had he been born the son of Joseph Downer, of the county of Muscogee, and be made capable by this act of taking, receiving and inheriting all manner of

property under the statute of distribution of this state, so far as relates to the estate of the said Joseph Downer." The son thus adopted died before the said Joseph, leaving children:

*Held*, that in the distribution of the property of Joseph Downer, the children of Mathew stood in the place of and represented the father and took whatever of said estate he would have taken if living.

Parent and child.   Distribution.   Representation.   Before Judge JAMES JOHNSON.   Muscogee Superior Court.   May Term, 1873.

The charge of the court, taken into connection with the facts set forth in the above head-note, reports this case. The court charged the jury "that the act of 1850, to change the name of Mathew R. Brown to Mathew Downer, and to make him a legal heir, did not make the children of Mathew Downer the heirs of Joseph Downer, the said Mathew, their father, having died before the said Joseph." To this charge the complainant excepted.

A verdict was returned in accordance therewith for the defendant.

Error is assigned upon the above ground of exception.

HENRY L. BENNING; J. M. McNEIL, for plaintiffs in error.

INGRAM & CRAWFORD; CHAPPELL & RUSSELL; THORNTON & GRIMES, for defendants.

McCAY, Judge.

The question in this case turns entirely upon the meaning of the act of 1850. The presumption is that it was passed at the request of Joseph Downer, and it is to be construed in that view, since it cannot for a moment be supposed that the legislature would pass such a law except at the request of the person whose estate and family it operated upon. The act gives to Mathew not only the name of Downer, but declares he shall have all the rights and privileges that he would have had had he been born the lawful son of the said Joseph. Was

it one of these rights and privileges that his children should represent him in the disposition of the estate of Joseph Downer? 'Would he be clothed with the full relation of a son to Joseph, if dying before him, he could not rely upon the children of his loins standing in his place and representing him in the estate of that father as they would have done had Downer been in fact the father? It is not a question of heritable blood. Mathew was by the act *made* the son, he was clothed with the rights of a son, and had cast upon him the duties of a son. He was made the heir, and if his adopted father had died first he would have taken as son and heir.

An heir is one who takes an estate by operation of law on the death of the owner. It is not necessary that the heir shall be of the blood of the deceased. Our statute, in terms, makes the wife and the husband heirs of each other, and if the law were to provide that at the death of any one his estate should go to his nearest neighbor, that neighbor would be the heir. The act of 1850, declaring Mathew to have the same rights and privileges as he would have had had he been born the son of Joseph, goes further and declares in terms that he shall be capable "of taking, receiving and *inheriting* all manner of property under the statute of distributions, so far as relates to the estate of said Joseph Downer." Taking, therefore, both clauses of the act together, Mathew was, so far as Joseph and his estate was concerned, made the *lawful* son and *lawful* heir of Joseph. It was contended, in argument, that by the common law an heir must of necessity be of the *blood* of the ancestor. In the feudal sense of the words that is perhaps true. Indeed, technically, no one, not even a child, is heir by the common law, except as to lands. And that heir is the eldest son who, under the grant of the lord who gave the estate, takes the place of the father in the service under which the estate is holden. But under our law all take under the statute of distributions; land as well as personal estate is assets—and heirs and distributees are synonymous words. The very act under consideration provides that Mathew shall be capable of *inheriting* under the statute of distributions.

As to personal property there was at common law no heir; those who took it took as distributees. But our law everywhere recognizes those who take under the statute of distributions as heirs, whether they be of the blood or not. The words are, "the husband is *heir* of the wife:" Code, 24. Assuming, then, that Mathew was made by this act the lawful son, and declared capable of inheriting, it seems clear to us that under paragraph 4 of the same section, "the lineal descendants of children stand in the place of their deceased parent," the children of Mathew stand in his stead. It is said that the lineal descendants in all cases take, not through the father, but by virtue of their being of the blood of the ancestor, and that they are put in the place of the father merely to regulate the share they take. But this is not entirely true. They must, in all cases where they take *per stirpes* account for advancements to their father or lineal ancestor, and Burns, Ec. Law, volume IV., page 338, says: "The reason for this is, that they do not take in their *own right* but as representing their father deceased." And again, "in this regard the issue stand in the place of the father, *claim under him,* and cannot be in a better condition than the father, if living, would have been, and had claimed his distributive share."

Again, our law provides, "If a legatee die before the testator, or is dead when a will is executed, but shall have issue living at the death of the testator, such legacy, if absolute and without remainder or limitation, shall not lapse but shall vest in the issue in the same proportions as if inherited from their deceased ancestor:" Code, section 2462. It seems to us that an act of the legislature presumed, as we have said, to have been procured by Downer declaring Mathew the son, with all the rights and privileges of a son, including the right to inherit, may far more fairly be said to include in this the right of his children to represent him than it can be said that a legacy to one who dies before the testator, shall be said by presumption to include the children of the deceased legatee.

In the case of *Shelton vs. Wright, administrator,* 25 *Georgia,*

636, this court held that the children of Sheldon's blood inherited from the adopted son, at least so far as property was concerned, that came from the adopting father, the principle of the decision being that Sheldon, having procured the adopting act, and having thus made the person adopted a son and heir of his property, he *ipso facto* made his other children the brothers and sisters of the adopted child, so far as his, Sheldon's, property was concerned. And so here, so far as the property of Joseph Downer is concerned, we think the adopting act makes the children of Mathew the representatives of the father in case Mathew should die first. And this, as every man must feel, is the natural common sense meaning of an adopting act. In most cases of the kind it is a mere mode of legitimating the real fruit of the father's loins, and it is no unfair presumption that it is the intent of the father, so far as he and his property is concerned, to make the relation exactly what it would have been had there been a lawful and actual relation of parent and child.

We do not think refined arguments, based on obsolete rules and feudal necessities, ought to be permitted to thwart the purposes of one who, through affection or a sense of justice, has thus undertaken to establish the relation of parent and child according to law, between himself and another.

For these reasons we think the judgment in this case ought to be reversed.

Judgment reversed.