Gray v. Holmes.

MATILDA GRAY *et al.* v. B. F. HOLMES *et al.*

No. 8762.

1. DESCENT — *child legally adopted in another state inherits Kansas lands as if born in wedlock.*  A child adopted in a sister state, in substantial compliance with her statutes, will inherit lands of the deceased adopting parent in this State on equal terms with a child of such parent born in wedlock.

2. ——— *heirs of a child so adopted inherit as heirs of a child by blood.*  The heirs of an adopted daughter will inherit through her a share of the estate of the deceased adopting parent, just as if she were a daughter of such parent by blood.

3. ——— *intestate son leaving no wife nor issue, Act of 1859 gave whole estate to father.*  Under § 18 of the Act of 1859 regulating descents (Comp. Laws 1862, 470,) when a child died intestate, leaving no wife nor issue, the whole of his estate went to his father.

*Error from Bourbon District Court.*

*Hon. S. H. Allen, Judge.*

AFFIRMED.                    OPINION FILED JULY 11, 1896.

THE original action was brought by B. F. Holmes and Una Holmes against Elizabeth E. Huffman and Matilda Gray for the partition of certain real estate of which Adam Huffman died seized, the same not being necessary for the payment of debts.  Adam Huffman married Sophronia Gray, daughter of B. W. and Sarah Gray, in 1860.  William H. Huffman was born in July, 1861, the only child of said marriage.  Sarah Gray died intestate January 1, 1862.  Her daughter, Sophronia J. Huffman, died intestate January 7, 1862, and said child William H. Huffman died January 14, 1862.  After the death of his wife and his son as aforesaid, Adam Huffman married Elizabeth E. Adamson, a widow, and on September 5, 1870, he adopted as his daughter Alice Ann Adamson, a girl about 10 years of age, by deed under the Missouri statute, in Vernon County where all then resided.

Afterward, Alice Ann was married to B. F. Holmes
and there was born unto them Una, a daughter.
Alice Ann died intestate before the death of Adam
Huffman, who also died intestate in April, 1890.   B.
W. Gray is still living, and on April 16, 1891, he con-
veyed his interest and title, if any, to Matilda Gray.
The Court found and adjudged that the plaintiffs, B.
F. Holmes and Una Holmes, were each entitled to an
undivided one-fourth part of said real estate, and that
Elizabeth E. Huffman was entitled to one-half thereof,
and that Matilda Gray had no interest therein ; and
this proceeding in error is prosecuted for the purpose
·of reversing said judgment, it being claimed by the
plaintiffs in error that the defendants in error had no
interest in said real estate.

*Walter L. Simons*, for plaintiffs in error.

*A. A. Harris*, and *Henry E. Harris*, for defendants
in error.

MARTIN, C. J.   I.   It was assumed but not decided
in *Renz v. Drury*, ante, page 84, that a child adopted
in a sister state in substantial compliance with her
statutes, would inherit lands of the de-
ceased adopting parent in this State on
equal terms with a child of such parent
born in wedlock.   This proposition, how-
·ever, is now earnestly controverted by the plaintiffs in
·error.   Counsel says that Alice Ann Adamson could not
have inherited from Adam Huffman in the absence of
sections 6 and 7 of chapter 67 of the General Statutes
of 1889 ( ¶ ¶ 3873, 3874 ), relating to the adoption
·of minor children; that only children adopted in the
Probate Court in accordance with our statute are
" entitled to the same rights of person and property
.as children or heirs at law of the person thus adopt-

1. Inheritance
by adopted
child.

ing them''; and that Alice Ann was not adopted in this way, but only by deed. This, however, was the method prescribed by chapter 29 of the Revised Statutes of Missouri, 1889, then in force; and the Supreme Court of that State, in *Fosburgh v. Rogers*, 114 Mo. 122, held that a child adopted in accordance with the statute acquires a right to inherit from the adopting parents upon their intestacy, and that this right does not conflict with the Statute of Descents, but only points out who are to be deemed children under that statute. See also *Moran v. Stewart*, 122 Mo. 295. Now, although the method of adoption in Missouri essentially differs from our own, yet the rights conferred upon the child are substantially identical in the two states. A personal or relative *status* lawfully acquired in one state or country will generally be recognized by the courts of another state or country. This proposition was clearly stated by Chief Justice GRAY in *Ross v. Ross*, 129 Mass. 243, 246, as follows:

"It is a general principle, that the *status*, or condition of a person, the relation in which he stands to another person, and by which he is qualified or made capable to take certain rights in that other's property, is fixed by the law of the domicil; and that this *status* and capacity are to be recognized and upheld in every other state, so far as they are not inconsistent with its own laws and policy. Subject to this limitation, upon the death of any man, the *status* of those who claim succession or inheritance in his estate is to be ascertained by the law under which that *status* was acquired; his personal property is indeed to be distributed according to the law of his domicil at the time of his death, and his real estate descends according to the law of the place in which it is situated; but, in either case, it is according to those provisions of that law which regulate the succession or the inheritance of persons having such a *status*."

The opinion is replete with learning upon the whole subject of the law of place as affecting the *status* of a person changing his domicil, or having property rights in other states or countries, and it was held that a child adopted under the laws of Pennsylvania would be recognized as such upon the removal of the adopting father with the child into the State of Massachusetts. This case was cited with approval by the Supreme Court of Illinois in *Van Matre v. Sankey et al.*, 148 Ill. 536, where it was held that a decree adopting a child is a declaration by competent authority operative to change its *status*, and *ipso facto*, to render it that which the law declares it to be — an heir of the person adopting, and to make it capable of inheriting from him in all respects as if it were his own child, born in wedlock; and it may inherit property in other states than that in which the adoption was had from its adopting parent. The Supreme Court of Rhode Island, following the Massachusetts and Illinois cases, held in *Melvin v. Martin*, 18 R. I. 650, that the *status* of a person is to be determined by the law of his domicil, and such *status*, with its incidental rights of succession and inheritance, should be recognized in another state, when there is nothing in its laws to prevent it. We consider these cases to be founded upon indubitable reasoning and that their authority should be followed in this State.

II. The next contention of the plaintiffs in error is that, even if Alice Ann might have inherited from Adam Huffman, yet the adoption conferred upon her heirs no right to inherit from him, because the statute relating to descents in the use of the word "children" had no reference to others than children by blood. But this position is inconsistent with the reasoning in the fore-

2. Inheritance by heirs of adopted child.

going cases, and with the fair interpretation of our statute. The adoption of children is an invention usually accredited to the Civilians. It is not of common-law origin. It is now common in Europe, and is recognized and regulated in most of the states of our Union by statute. In *Vidal v. Commagere*, 13 La. Ann. 516, it is stated on the authority of the Digest that,

" Under the Roman law, the person adopted entered into the family, and came under the power of the person adopting him. And the effect was such, that the person adopted stood not only himself in relation of child to him adopting, but his children became the grandchildren of such person."

In *Power &c. v. Hafley &c.*, 85 Ky. 671, the Court of Appeals of Kentucky held that where an adopted child, made capable by a special act of taking and holding by descent the estate of the person adopting him, dies before such person, leaving children, those children inherit the estate of the person who adopted their deceased parent, as if they were his grandchildren, the *jus representationes* attaching as fully to the adopted child as to the child by blood. In the construction of a statute founded upon a principle of the Roman Law, we are authorized to appeal to that law as an aid in the interpretation of the statute ; and we think it plain, from the language of our statutes construed in the light of the adjudged cases and the principles of the Civil Law, that the widower and the child of Alice Ann inherited through her an interest in the estate of Adam Huffman.

III. The plaintiffs in error further claim that Elizabeth E Huffman, as the widow of Adam Huffman, and B. W. Gray, the grandfather of William H. Huffman, inherited a portion of the estate of Adam

Huffman through William H. Huffman **3. Whole estate of intestate son leaving no issue goes to father. Act 1859.** by representation; but this claim is un-founded. Under section 18 of the statute of 1859 regulating descents (Comp. Laws 1862, 470), the only heir of William H. Huffman was Adam Huffman, his father. If the child had died seized of any property, no person but Adam Huffman would have been entitled to any of it. If at the death of the child his father had been "previously dead," then the principle contended for by the plaintiffs in error might have some force under section 19 of the statute. The doctrine of *Delashmutt v. Parrent*, 40 Kan. 641, has no application.

The Court below correctly applied the law to the uncontroverted facts in the case, and the judgment must be affirmed.

All the Justices concurring.