## In Re George W. Walworth's Estate.

### May Term, 1911.

Present: Rowell, C. J., Munson, Watson, Haselton, and Powers, JJ.

Opinion filed January 8, 1912.

*Construction of Statutes—Adoption—No. 137, Acts 1880—Inheritance from Adopter—Status of Person Adopted—P. S. 2936—Inheritance—"Children"—"Issue".*

In aid of the interpretation of a statute it is proper to look to other statutes, to the rules of the common law, to the source whence the statute was derived, to the principles of equity, to the objects of the statute, and to the conditions existing when it was enacted.

The doctrine of adoption is unknown to the common law, exists only by statute, and is derived from the civil law, and so it is proper to look to that law in aid of the interpretation of our statutes on that subject.

On the adoption of a person, under the provisions of No. 137, Acts 1880, P. S. 3264-3270, all the rights, duties, and obligations between him and his natural parents terminate, and his status, rights, and obligations become those of a child of the adopter born in lawful wedlock, except that he cannot inherit property expressly limited to the heirs of the latter's body, nor inherit through him by right of representation; and so where an intestate left a widow, but no issue of his body, and before his marriage with her he adopted claimant's mother, who predeceased him, leaving claimant, who is her legitimate child, surviving her, and intestate's widow, at the time of their intermarriage, knew that he had adopted claimant's mother, but neither assented nor objected thereto, claimant is entitled by representation to share in intestate's estate, not limited to the heirs of his body, to the same extent as if claimant were intestate's real grandson, it being a case where an intestate left "legal representatives of deceased children," within the meaning of the first canon of descent, P. S. 2936, and of the first clause of P. S. 2925, subd. III. *Moore* v. *Moore's Exrs*, 35 Vt. 98, and *Stanley* v. *Chandler*, 53 Vt. 619, distinguished.

The status of parent and child is a correlative one, hence where there is a legal child there must have been a legal father, and the children of such legal child, whether the latter was adopted or born in lawful wedlock, are the grandchildren of such legal father.

P. S. 3270, creating rights of inheritance between the parties to an adoption, and P. S. 2936, containing the canons of descent of intestate estates, are *in pari materia*, and should, therefore, be construed together as one law.

In the first canon of descent of intestate estates, P. S. 2936, providing that an intestate's estate shall descend to his "children," "or the legal representatives of deceased children," and in the second canon, providing that, if the intestate was married, "and leaves no issue," the surviving husband or wife shall take as designated, the words "children" and "issue" are not limited to children born in lawful wedlock, but include adopted children, and the word "issue" includes the legal representatives of such deceased children.

In the provision of P. S. 3270 that, when an adoption is affected, "the same rights of inheritance shall exist between the parties as though the person adopted had been the legitimate child of the person or persons making the adoption," the phrase, "between the parties," does not limit the right of inheritance to "between the parties" to the adoption, but limits the right of the person adopted to inheriting from the person or persons making the adoption, to the exclusion of any right to inherit through such person or persons by right of representation; and so the surviving child of an adopted person may inherit from the adoptive father of his deceased parent, for the statute only fixes the status produced by the adoption, to which status incidents are attached by fixed rules of law.

APPEAL from the decree of the probate court distributing the estate of George W. Walworth, deceased, intestate, adjudging that Howard M. Scott is the intestate's heir at law, and decreeing to J. K. Batchelder, as guardian of Howard M. Scott, two-thirds of said estate; Jennie L. Walworth, the intestate's widow, and his brothers and sisters, appellants. J. K. Batchelder, as such Guardian, appellee. Heard on an agreed statement of facts at the December Term, 1910, Bennington County, *Waterman*, J., presiding. Judgment, *pro forma*, affirming the decree of the probate court. The appellants excepted. The opinion states the case.

*Holden & Healey* for the appellants.

*Batchelder & Bates* for the appellee.

WATSON, J. On the 18th day of April, 1909, George W. Walworth died intestate at Bennington, this State, the place of his residence, leaving a solvent estate in this State consisting mostly of real property. He left surviving him a wife, Jennie L. Walworth, and several brothers and sisters (the exceptants in this case), but no father or mother. On January 15, 1885,

by an instrument of adoption properly executed, filed, and recorded pursuant to the statute (R. L. Ch. 127) the intestate, then single, duly and legally adopted one Maggie Mitchell, then a minor, as his heir at law. Subsequent to such adoption, and on October 17, 1901, the intestate married Jennie L., she then knowing of said adoption, but at no time assenting or dissenting to or from the same. Subsequent to her adoption Maggie married, and after the marriage of her adoptive father and within his lifetime she died leaving a son, Howard M. Scott, born in marriage, surviving her. Howard M., now a minor, by his guardian claims in consequence of the adoption of his mother to be an heir of the intestate by right of representation, and as such entitled to a distributive share of his estate. No children were ever born to the intestate. The court below decreed *pro forma* that Howard M. is an heir at law of the intestate, and that he is entitled to two-thirds of the intestate's estate remaining for distribution, the widow to the remaining one-third, and that the brothers and sisters of the intestate take nothing. To this decree exceptions were severally taken by the widow, the brothers and sisters.

By Laws of 1880, No. 137, Sec. 1, "any person other than a married woman, of full age and sound mind, and any husband and wife, may adopt any other person as his or their heir at law with or without change of name of the person adopted." Sections 2, 3, 4, and 5 prescribe the method of procedure, and the form of the instrument to be executed to effect such adoption. And by sec. 6, "Such instrument shall, if it appears to the probate court that the provisions of the statute have been complied with, be recorded in the probate office where it is filed. And upon the proper execution and filing of such an instrument the same rights, duties and obligations and the same rights of inheritance shall exist between the parties as though the person adopted had been the legitimate child of the person or persons making the adoption, except that the person so adopted shall not be capable of taking property expressly limited to the heirs of the body or bodies of the parties making such adoption. And the natural parents of a minor shall be deprived, by the adoption, of all legal rights as respects the control of such minor, and such minor shall be freed from all obligation of obedience

and maintenance as respects his natural parents." The law of these sections appears in R. L. 2536-2541, without change, and was in force at the time of the making of the adoption hereinbefore mentioned.

The question then is, whether the child of the adopted daughter deceased is entitled to inherit through her by right of representation a share in the adoptive father's intestate estate. This question, now for the first time before this Court, is not on the face of the statute altogether free from doubt.

The doctrine of adoption was unknown to the common law of England, and in this country, in states whose jurispruddence is based exclusively on that system, it exists only by statute. *Matter of Thorne,* 155 N. Y. 140, 49 N. E. 661; *Burrage* v. *Briggs,* 120 Mass. 103; *Ross* v. *Ross,* 129 Mass. 243, 37 Am. Rep. 321; *Morrison* v. *Estate of Sessions,* 70 Mich. 297, 14 Am. St.Rep. 500, 38 N. W. 249. It has, however, been recognized by the civil law from the earliest days of its existence, and on the provisions of that law our statute, as well as largely the statutes of adoption in the different states of the Union, has been founded. It is therefore reasonable and proper to look to the civil law for the proper definition of the term, and in aid of the interpretation of the provisions in question. *Power* v. *Hafley,* 85 Ky. 671, 4 S. W. 683, 9 Ky. Law Rep. 369; *Gray* v. *Holmes,* 57 Kans. 217, 33 L. R. A. 207, 45 Pac. 596; *Humphries* v. *Davis,* 100 Ind. 274, 50 Am. Rep. 788. In the case last cited, where the construction of an adoption statute was under consideration, the court said: "A statute is not to be construed as if it stood solitary and alone, complete and perfect in itself, and isolated from all other laws. It is not to be expected that a statute which takes its place in a general system of jurisprudence shall be so perfect as to require no support from the rules and statutes of the system of which it becomes apart, or so clear in all its terms as to furnish in itself all the light needed for its construction. It is proper to look to other statutes, to the rules of the common law, to the sources from which the statute was derived, to the general principles of equity, to the object of the statute, and to the condition of affairs existing when the statute was adopted."

By the civil law before the time of Justinian the effect of adoption was to place the person adopted in the same position

he would have held had he been born a son of the adopter; all the property of the adopted son belonged to the adoptive father; the adoptive son was heir to his adoptive father, if intestate, bore his name, etc., and shared the sacred rites of the family he entered. It sometimes happened under this law that a son lost the succession to his own father by being adopted, and to his adoptive father by a subsequent emancipation. To remedy this, Justinian provided that the son given in adoption to a stranger should be in the same position to his own father as before, but gained by adoption the succession to his adoptive father if he die intestate. And by that law the adopted son is declared "assimilated, in many points, to a son born in lawful matrimony." Sandars' Justinian, 113, 115, 119. Lord Mackenise, in his work on the Roman Law, p. 131, says that, "By the ancient civil law adoption created the relation of father and son for all practical purposes, just as if the adopted son were born of the blood of the adoptive father in lawful marriage. The adopted child quitted entirely his own family and entered the family of his adopter, passing under the paternal power of his new father, and acquiring the capacity to inherit through him." The same author says: "Augustus did not adopt Tiberius, who succeeded him in the empire, till Tiberius had adopted his nephew Germanicus; and the effect of this was, that Tiberius became the son and Germanicus the grandson of Augustus at the same time." In *Vidal* v. *Commagere*, 13 La. 516, a leading case on the civil law pertaining to the subject, the minor child was adopted under an act of the Legislature authorizing Vidal and wife "to adopt" her. The controversy was between the nephews and nieces of the deceased adopting wife, and the adopted child, for the property of the succession of said wife. Vidal and wife were simply authorized "to adopt" the child, naming her, "provided the adoption be executed" within a specified time. The court said the whole question was one of interpretation: What rights did the Legislature intend to confer upon the child by authorizing Vidal and wife to adopt her? "What was meant by adoption?" The court said: "Under the Roman law, the person adopted entered into the family, and came under the power of the person adopting him. And the effect was such that the person adopted stood not only

himself in relation of child to him adopting, but his children became the grandchildren of such person." It was held, "that, as by the common acceptation of the word adoption, the relationship of parent and child with all the consequences of that relationship is understood, as such was the legal meaning of the word under the former laws of Louisiana, and as such is its acceptation among civilians and those conversant with the sources of our laws, we cannot say that the Legislature used the word in a more restrained sense; in a sense not understood in common parlance, nor given in any dictionary, and not known in any system of laws. As by the former laws of Louisiana, the person adopted bore the relation of child to the person adopting, and inherited his estate, so we think the Legislature, by the solemn expression of its will, intended to confer the same right upon the plaintiff to the estate of those who were authorized to adopt her." By the decree it was ordered that she be recognized as the sole heir of the deceased, and be put into the possession of all the property of the succession.

Mr. Holland, in his Elements of Jurisprudence, says that parental right extends to the custody and control of children, and to the produce of their labor till they arrive at years of discretion; and that it is acquired on the birth, and also under some systems, on the adoption of a child. Holl. Jur. (10th Ed.) 172.

In *Ross* v. *Ross*, cited above, the question was, whether a child legally adopted in Pennsylvania and thus entitled to inherit real estate there, having with the adopting parent become resident in Massachusetts, could inherit the real estate of such parent in the latter state upon his dying there intestate. Holding that generally the law of the domicile of the parties is the rule which governs the creation of the status of a child by adoption, it became necessary for the court to determine the legal status of the adopted child by the statute of Pennsylvania under which the adoption was had, as construed by the highest court of that state. Referring to two such cases the court said: "The opinion in each of those cases clearly recognizes what is indeed expressly enacted in the statute, that as between the adopted child and the adopting father, the child has all the rights and duties of a child, and the capacity

to inherit as such. According to one of the most learned and thoughtful writers on jurisprudence of our time, it is the rights, duties, and capacities, arising from the event which creates a particular status, that constitute the status itself and afford the best definition of it. 2 Austin on Jurisprudence (3d Ed.) 706, 709-712, 974. By the law of Pennsylvania, therefore, as enacted by its Legislature and expounded by its highest judicial tribunal, the demandant, as between him and his adopting father, has in all respects the legal status of a child."

By the statute of Indiana, a child after its adoption takes the name in which it is adopted, and is entitled to all the rights and interests in the estate of the adopter, by descent or otherwise, that it would if the natural heir of the adopter; and the adoptive father or mother occupies the same position toward such child that he or she would if the natural father or mother, and is liable for the maintenance, education, and every other way responsible as a natural father or mother,—in substance not materially unlike our own statute, except that ours excludes from the right of inheritance property expressly limited to the heirs of the body of the adopter. In *Markover* v. *Krauss*, 132 Ind. 294, 17 L. R. A. 806, 31 N. E. 1047, the court, recognizing the civil law as the source from which the statutory rules of adoption in this country have been borrowed, said, that under that law, after the revision by Justinian, as before, the adopted child while held in the bonds of adoption, was still in the position of a natural child born to the adopting father; that the law could and did make the legal status of the child adopted in every respect that of the natural child; and that the son of the adopted son was by the law made the grandson of the adopting father, with all the legal rights incident to that relation. It was held that the intention of the statute was to give to adopted children the same relation to adopting parents that was given them by the civil law; and that, so far as property rights were concerned, it was the intention to give them the same rights as if they were their natural children, or children of their blood.

Although the direct effects of adoption under our statute are not left to rest upon the determination of the meaning of that term by construction, yet such effects expressly declared by the law-making power correspond in most respects with the

principles of the early civil law: as respects his control and the duties and obligations resulting from the adoption, the person adopted is placed in exactly the same position he would have held had he been born a son of the adopter; and in such respects all rights, duties and obligations between the child and his natural parents terminate. And except as to property expressly limited to the heirs of the body of the adoptive parent (an exception of no apparent moment on the question of the status created), the right conferred upon the child to inherit from such parent is also measured by that in law of a natural child. We think it logically follows from the authorities to which reference has been made, that under the statute, construed in the light of the civil law, the adopted child by the event of the adoption becomes the legal child of the person or persons making the adoption, and stands as to the property of the adoptive parent in the same position a child born in lawful wedlock, except as to property expressly limited to the heirs of the body of the adopter. *Ross* v. *Ross*, cited above; *Buckley* v. *Frazier*, 153 Mass. 525, 27 N. E. 768; *Flannegan* v. *Howard*, 200 Ill. 396, 65 N. E. 782, 93 A. S. R. 201, 59 L. R. A. 664; *Atchison* v. *Atchison's Exrs.*, 89 Ky. 488, 12 S. W. 942, 11 Ky. Law Rep. 705; *Hilpipre* v. *Claude*, 109 Iowa, 159, 80 N. W. 332, 46 L. R. A. 17, 77 Am. St. Rep. 524; *Moran* v. *Moran*, 151 Mo. 558, 52 S. W. 378.

Furthermore, the status of parent and child is a correlative one. Where there is a legal child there is a legal father. In *Humphries* v. *Davis*, cited above, the court said it was not to be presumed that the Legislature meant to violate logical results by creating the legal relation of child without the corresponding one of parent. As a logical sequence, the children of such legal child are the grandchildren of the legal father. The status of Howard M. is therefore that of a legal grandchild to the intestate, and as such he is entitled to stand in his mother's place and right respecting the intestate estate, and share in it as her legal representative, unless prevented from so doing by the restrictions contained in either the statute of adoption or the statute of descent, presently to be considered. The exceptants rely upon the cases of *Moore* v. *Moore's Exrs.*, 35 Vt. 98, and *Stanley* v. *Chandler*, 53 Vt. 619, as authorities against

such right of representation. Yet they are not so. In the Moore case by the special act the name of the person was changed, and she was "constituted heir at law of etc.," in as full and perfect a manner as if she had been the daughter of the said man and wife named, "born in lawful wedlock." The word "adopt," or "adoption," is not used in the act, hence a construction based upon the meaning of the term "adoption" under the civil law, as in the Louisiana case, could not be given; nor did the act confer upon either party any rights, duties, or obligations, other than such as resulted from the mere creation of an heir at law. And it should seem that the court had this peculiar feature of the act in mind for it says: "It is hardly claimed, that if the act had merely constituted Mrs. Wright *heir at law* of Mr. and Mrs. Dunbar, it would have had this effect (make her the child and lineal descendant of them), but the subsequent words, it is insisted, could have been used for no other purpose, and are mere useless surplusage unless such effect be given them. But it seems to us that these additional words were used to show the extent and define the limits of the heirship thus created. The real question there was, whether Mrs. Wright, by right of representation, through Mrs. Dunbar deceased, became heir to the estate of the latter's brother subsequently dying intestate. It was held that the right conferred to inherit from Mrs. Dunbar did not give the right thus to inherit through her. The Stanley case was based upon a similar special act, though even briefer in terms: no additional words of definition or limitation being used therein, such as were noticed by the Court in the Moore case. The instrument of assent was executed by John Bullock alone, then a married man, and the opinion states that it was not shown that his wife was instrumental in procuring the passage of the act, or ever approved of it, and it was in derogation of her rights secured by law, in case she survive her husband, as she did. The question involved, as stated by the Court, was: "Did the adoption of John Chauncey Chandler in the manner in which it appears he was adopted, constitute him in a legal sense the child or issue of John Bullock, so that under the general statutes of descent or the special act constituting him heir, he would be entitled to the estate of John Bullock by inheritance

to the exclusion of the widow?" It was held that it did not; and the widow was allowed, under the statute, one thousand dollars and one-half of the remainder of the estate. We think the Moore case and the Stanley case are so distinguishable in bases, and in the questions involved, from the case at bar, that they have but little force as precedents in solving the questions before us.

The special act under which the adoption was had in *Powers* v. *Hafley*, cited above, changed the name of the child from that of her natural parents to that of the adoptive parents, and made her "capable of taking and holding, by descent, the estate of" the latter "in as full and complete a manner as if she was his lawful child." The language of that act is certainly no broader than that of the statute now under consideration. After adoption the child died leaving children (the appellants in that case), and after her death the adoptive father died intestate. The question was, whether the appellants, as such children, were entitled to the estate of the intestate, by right of representation. It was held that by the law of adoption the adopted child was made a full legal heir to the adopting father, and was put precisely upon the same footing, so far as taking and holding the latter's property by descent was concerned, as a natural child; that, taking the logical sequence of the language of the act, aided as it is by the principles of the civil law, the conclusion was inevitable that the appellants were the legal grandchildren of the adopting father, and as such by right of representation entitled to share in the distribution of his estate. The doctrine of this case was reaffirmed in *Atchison* v. *Atchison's Exrs.*, 89 Ky. 488, 12 S. W. 942, 11 N. Y. Law Rep. 705. To the same effect is *Gray* v. *Holmes*, 57 Kans. 217, 33 L. R. A. 207, 45 Pac. 596. In *Pace* v. *Klink*, 51 Ga. 220, the legislative act of adoption changed the surname of the adopted child to that of the adopter, and provided "that he be entitled to all rights and privileges that he would have been entitled to had he been born the son of" the adopter, and be made capable "of taking, receiving, and inheriting all manner of property under the statute of distributions    *  *  *,    so far as relates to the" latter's estate. The adopted son died before the adoptive parent, leaving children surviving him. The

question was whether these children, by right of representation, were entitled to take the same distributive share of the estate of the adoptive father, intestate, that their father would have taken if living. It was held that by the statute of adoption the adopted, so far as the adopter and his estate were concerned, was made the lawful son and lawful heir of the adopter; and that, so far as the property of the latter was concerned, the adopting act made the children of the adopted son the representatives of their father should he die first.

From the examination we have given the subject, it is believed that in no other reported case has a like question been determined, and hence that there is no diversity of decision.

It is said however that the words "between the parties", used in the section of the statute pertaining to the effects of the adoption, should be literally and strictly applied, and that with such application they clearly indicate an intention by the Legislature to limit the right of inheritance to "between the parties" to the instrument of adoption. The statute expressly defines the direct effects produced by the event of adoption; but it contains nothing which excludes the incidental consequences of the status produced, either alone, or coupled with subsequent facts. An "incident," says Lord Coke, is "a thing appertaining to or following another as a more worthy or principal." Co. Litt. 1515. The direct effects of the adoption are complete when that event is entered upon. But the incidents are attached to the status by fixed rules of law, and whether they become operative in resulting rights may be contingent upon subsequent circumstances. Thus, we have seen that by operation of law the minor child Howard M. is the legal grandchild of the intestate, consequent on the correlative relation of the parties to the adoption. Yet the right of such grandchild to inherit from the intestate arises not out of the status produced by the adoption, alone, but out of that status coupled with the subsequent fact of his mother's death before that of her adoptive father intestate; and therefrom the law fixes the results. "Every right," says Mr. Justice Holmes, "is a consequence attached by the law to one or more facts which the law defines, and wherever the law gives any one special rights not shared by the body of the people, it does so on the

ground that certain special facts, not true of the rest of the world, are true of him.   When a group of facts thus singled out by the law exists in the case of a given person, he is said to be entitled to the corresponding rights." Holmes' Com. L. 214.

As respects the right of inheritance we think the words "between the parties" are intended to limit such right of the person adopted to inherit from the person or persons making the adoption, and to this end they in effect negative any right to inherit through such person or persons by right of representation; and if the statute be mutual (a question not considered), the right of the adopter to inherit is limited in like manner. Yet as such limitations do not pertain to incidental consequences flowing from the legal parental relations, the right of the minor child in this case, through his mother by right of representation, to share in the intestate's estate is not affected thereby.

It is further contended that the word "children," as used in the first canon of descent (P. S. 2936), does not include an adopted child, and that the word "issue," as used in the second canon, does not include either an adopted child or the children of such child. In *Ross* v. *Ross*, cited above, it is said that the statute of descent "must be understood as merely laying down general rules of inheritance, and not as completely and accurately defining how the status is to be created which gives the capacity to inherit. It does not undertake to prescribe who shall be considered a child, or a widow, or a husband, or what is necessary to constitute the legal relation of husband and wife, or of parent and child. Those requisites must be sought elsewhere. The words 'children' and 'child,' for instance, in the first clause, 'issue,' in the phrase 'if he leaves no issue,' in subsequent clauses, and 'kindred,' in the last two clauses of this section, clearly include a child made legitimate by the marriage of its parents and acknowledgment by the father after its birth under section 4 of the same chapter, or a child adopted under the provisions of chapter 110 of the General Statutes, or chapter 310 of the statutes of 1871." Exactly the same holding was had in *Fosburg* v. *Rogers*, 114 Mo. 122, 19 L. R. A. 201, 21 S. W. 82.

If the contention of the exceptants in this regard were sound, the provisions of the statute of adoption expressly conferring upon the person adopted the capacity to inherit would be in

conflict with the statute of descent. And yet in this respect these two statutes, relating to the same subject, are in *pari materia* and should be construed together as if they are one law. *Highgate* v. *State*, 59 Vt. 39, 7 Atl. 898; *Isham, Admr.* v. *Bennington Iron Co.*, 19 Vt. 230; *State* v. *Central Vt. Ry. Co.*, 81 Vt. 463, 71 Atl. 194, 130 Am. St. Rep. 1065. We have already held in this case that the adopted child was, in a legal sense, the child of the intestate. As to the property of the estate, she is to be deemed his child, the same as if born to him in lawful wedlock. It follows as seems clearly was the intention of the lawmaking power, that the word "children" in the first canon of descent should be construed to include a child adopted under the general provisions of the statute of adoption. By such construction the two statutes are made to harmonize and to operate together consistently with the evident intent of the enactments. In *Sayles* v. *Christie*, 187 Ill. 420, 58 N. E. 480, the special act of adoption made the adopted child the heir at law of the adoptive parents and declared her to be entitled to all the rights that would belong or pertain to her were she their daughter, and conferred upon her full power to take, hold, enjoy and transmit any and all property from them by descent in the same manner as if she had been their natural born child. On the death of the adoptive father it was claimed that he left no child, and that the widow by renunciation of the will, was entitled to take under the Dower Act as in such case provided. The language of the statute was: "If a husband die testate leaving no child or descendants of a child," etc. It was held that the adopted child in the eye of the law was as much the child of the testator, as though she had been born his natural child, and consequently the renunciation amounted to nothing. To the same effect are *Patterson* v. *Browning*, 146 Ind. 160, 44 N. E. 993; *Moran* v. *Stewart*, 122 Mo. 295, 26 S. W. 962, more particularly noticed in a later paragraph.

The word "issue" in the second canon of descent has a broader significance than the word "children" in the first, since it must necessarily include the "legal representatives of deceased children," also within the first. Indeed by statute (P. S.) 10 the word "issue," as applied to the descent of estate, shall include the lawful lineal descendants of the ancestor.

We are not called upon to define the term beyond the necessities
of this case.   To render the second canon consistent with the
first,—and no one for a moment can suppose it was intended
to be otherwise,—the word "issue" therein must include all
"children" and all "legal representatives of deceased children,"
within the proper interpretation of the first.   For otherwise,
the descent of an estate above the widow's third, might fall
within both canons, a result so absurd that any construction
producing it is to be avoided as not within the purpose of the
law-makers.   *In re Howard's Estate*, 80 Vt. 489, 68 Atl. 513.
By the Civil Code of California,  after adoption the child is
to "be regarded and treated in all respects as the child of the
person adopting;" and the two "shall sustain towards each other
the legal relation of parent and child, and have all the rights
and be subject to all the duties of that relation."   In *Estate of
Newman*, 75 Cal. 213, 16 Pac. 887, 7 Am. St. Rep. 146, it was
held that these provisions of the law extended to all the rights
and duties of natural parents and children; that the word "issue"
in their statute of descent does not limit the right of inheritance
to natural children only, but is used in the same sense as the
words, "child" or "children;" and that if the adopted child
was by virtue of its *status* to be "regarded and treated in all
respects as the child of the person adopting," and was to "have
all the rights and be subject to all the duties of the legal relation
of parent and child," the right to succeed to the estate of the
deceased parent must be included.   To the same effect are the
cases of *Atchison* v. *Atchison's Executors*, In *Rowan's Estate*,
and *Buckley* v. *Frazier*, all cited above.

It is further said that the widow's share of the estate should
not be affected by the adoption, since she never consented thereto
nor took any part therein, and reference is made to *Stanley
v. Chandler* in support of this position.   But in that case, as
before observed, the person was made "heir at law" by a married
man without the joinder or consent of his wife.   In such cir-
cumstances it seems to be pretty generally held, as there, that
the rights of the widow in the estate of the husband are not
affected thereby.   *Carroll's Estate*, 219 Pa. St. 440, 68 Atl.
1038, 123 Am. St. Rep. 673; *Nulton's Appeal*, 103 Pa. St. 286;

*Baskette* v. *Streight*, 106 Tenn. 549, 62 S. W. 142; *Keith* v. *Ault*, 144 Ind. 626, 43 N. E. 924; *Barnes* v. *Allen*, 25 Ind. 222.

In *Bancroft* v. *Heirs of Bancroft*, 53 Vt. 9, the adoption was by the husband and wife together, and the person adopted was made heir at law of them both. No question was raised by the widow, but the matter of the distribution of the adoptive father's intestate estate above the widow's third, to the adopted child, was contested by the brothers and sisters of the intestate, on the ground of ineffectual execution of the instrument of adoption. The instrument was held to have been properly executed to constitute the child heir at law of the intestate, and the judgment of the county court was affirmed. In the case at bar, as seen, the adoption was made by the intestate when single, more than six years before his marriage to the woman now his widow. And she knew of the adoption at the time of her marriage. The case is one, therefore, where the husband died intestate, leaving in the sense of the law, "legal representatives of deceased children," within the meaning of the first canon of descent, and of the first clause of division III, P. S. 2925. Hence under the statute of descent the widow's share of the intestate estate is affected thereby the same as it would be were such "representatives" of the intestate's deceased natural children. In *Rowan's Estate*, 132 Pa. St. 299, 19 Atl. 82, the testator died leaving a widow and an adopted daughter, but no natural child. The adoption was made by the testator before his marriage to the woman who survived as his widow. The widow having elected to take the share of the estate to which she would have been entitled under the intestate laws, it was claimed in her behalf that, as the decedent died without issue, she was entitled to one-half of the fund. The court below awarded her one-third from which she appealed. So the question was whether, as between the widow and the adopted child of the decedent, the child had all the rights of a natural child in the distribution of the estate. It was held that by the adoption the child became a child and heir of the person adopting her, so far as she could be made such by legislative enactment, and had all the rights of a child and heir of the adopting parent; that the widow had no reason to complain that her rights had

been interfered with by the act of her husband in making the adoption prior to their marriage, and the decree was affirmed. In *Moran* v. *Stewart*, 122 Mo. 295, 26 S. W. 962, the adoption was by husband and wife, as their child and heir. The wife died leaving her husband surviving. He subsequently married the plaintiff in suit. He died testate, having devised four hundred acres of land in question to his adopted son. The widow elected to take one-half of the real and personal estate of the deceased in lieu of dower. She then brought suit for the partition of the four hundred acres, basing her claim to one-half on the theory that her husband died "without any child or descendant in being capable of inheriting" within the meaning of a certain section of the statute to which reference was made. It was held that under the statutes of that state, for all the pruposes of inheriting from the adopting parent, the adopted child became, and was, the lawful child of the adopter, the same as if born in lawful wedlock; that as the testator died leaving a child capable of inheriting from him, it was clear that the widow was not entitled to one-half of the lands in suit, and the judgment was affirmed. This doctrine was reaffirmed in a subsequent case between the same parties, involving other lands. 132 Mo. 73, 33 S. W. 443. And it was reiterated in *Moran* v. *Moran*, 151 Mo. 558, 52 S. W. 378. To the same effect is *Markover* v. *Krauss*, 132 Ind. 294, 31 N. E. 1047, 17 L. R. A. 806.

*Judgment affirmed. To be certified to the probate court.*