14769

CRIBBS *ET AL.* v. FLOYD *ET AL.*

(199 S. E., 677)

444

*Mr. Joel I. Allen,* for appellants,

*Messrs. Eugene Hinson* and *F. W. Floyd,* for respondent,

November 15, 1938.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

On or about June 5, 1933, Sam G. Floyd, a resident of Marion County, died intestate, seized in fee and possessed of a tract of land containing 160 acres. The issues presented by this appeal grow out of an action for the partition of this land among his heirs at law. Sam G. Floyd left no issue, and the case turns upon whether or not proceedings instituted by him on December 24, 1921, before the Clerk of the Superior Court of Robeson County, North Carolina, for the adoption of his niece, the defendant Mattie Lou F. Ashley, are valid.

The appellants are sisters and brothers of Sam G. Floyd, and the children of a sister, who predeceased him. The defendants are the widow of Sam G. Floyd (Donnie S. Floyd), and the children of W. Pink Floyd, a deceased brother of Sam G. Floyd.

The appellants challenge the regularity of the adoption proceedings had before the Superior Court upon several grounds, and contend that although the Superior Court of Robeson County, North Carolina, is a Court of general

jurisdiction, in its exercise of this power, it is a Court of special and limited jurisdiction where no presumptions are indulged, its power in adoption proceedings being derived solely from the Statute.

The defendant, Mattie Lou F. Ashley, is the daughter of W. Pink Floyd. If the adoption proceedings are declared void she will inherit an interest in the land equal to an undivided 1/70 part, as an heir at law of her father, W. Pink Floyd. If the adoption proceedings are sustained, the widow, Donnie S. Floyd, will inherit an undivided one-third thereof, and the adopted daughter, Mattie Lou F. Ashley, will inherit an undivided two-thirds thereof.

The issues were referred to the Probate Judge for Marion County, and he found against the validity of the decree of adoption, upon the ground that the Superior Court did not have jurisdiction of Mattie Lou F. Ashley, who was actually in Marion County, South Carolina, at the time the letters of adoption were issued, and that she was neither personally present at the hearing before the Court not within its territorial limits. Upon exceptions to the Circuit Court, his Honor, Judge Dennis, in a well considered decree, reversed the Probate Judge, and upheld the validity of the adoption proceedings.

W. Pink Floyd lived near Marietta, in Robeson County, North Carolina, with his wife and children, and had been living there about twenty years prior to the institution of the adoption proceedings. His wife died when their infant child, Mattie Lou, was about five months old. About two weeks after her death, Sam G. Floyd and his wife, Donnie S. Floyd, with the consent of W. Pink Floyd, assumed the temporary custody of the child, and took her to Marion County, South Carolina, to live with them. She continued to live with them for seventeen years, after which time she married, and moved to Fairmont, North Carolina.

The adoption proceedings were commenced when Mattie Lou F. Ashley was six years of age, and while she still lived with her foster parents.

The adoption statute of North Carolina (Section 174, North Carolina Revisal of 1905) provides: "Any person desiring to adopt any minor child may file a petition in the superior court of the county wherein such child resides, setting forth the name and age of such child and the name of its parents, whether the parents or either of them be living, and if there be no living parent, the name of the guardian, if any, and if there be no guardian, the name of the person having charge of the child or with whom such child resides, the amount and nature of the child's estate, if any, and especially if the adoption is for the minority or for the life of the child."

On December 31, 1921, the Clerk of the Superior Court of Robeson County, upon the verified petition of Sam G. Floyd, issued letters of adoption to Sam G. Floyd and his wife, Donnie S. Floyd, which authorized and empowered them to "take charge of said child, Mattie Lou Floyd, and enter upon their duties as parents of said child for life, to the end that the relationship of parent and child may be fully established between the said S. G. Floyd and wife, Donnie Floyd, and Mattie Lou Floyd, minor child, aggreeably to an order made by the Court."

It is not suggested that the petition, which purported to be that of S. G. Floyd and his wife, but which was signed and verified by S. G. Floyd alone, does not fully comply with the requirements of the North Carolina law, except that the point is made that the petition should also have been signed by the wife, Donnie S. Floyd. The further objection is made, however, that the proceeding was not brought in the county of the child's residence. The proceeding was commenced in Robeson County, and named W. Pink Floyd, the father of the child, as respondent.

In the record introduced before the lower Court, there is included a written request addressed to the Clerk of the Superior Court and signed and sworn to by W. Pink Floyd, requesting that Court to issue the letters of adoption to S. G.

Floyd and Donnie S. Floyd, and this request included the statement that the adopting parents were fully able to provide for and educate the child. W. Pink Floyd also signed his consent at the foot of the decree of adoption. The record before the Court showed that Mrs. W. Pink Floyd, the mother of the child, died when the child was five months old.

The Supreme Court of North Carolina, in the case of *Truelove v. Parker,* 191 N. C., 430, 132 S. E., 295, had occasion to construe the adoption statute which we have herein set out. In that case the order of adoption was held void because the record did not show the consent of the mother of the child, who had apparently abandoned it, and was living in another state.

The Court, in construing the statute, held that the petition must set forth the names of the parents of the child to be adopted, and, if both are living, their consent is, as a rule, prerequisite to an order granting the letters; or, if one is dead, the consent of the survivor must be shown.

There is no merit in the contention that the Court did not have jurisdiction of W. Pink Floyd, the father of the child. He was a party to the proceeding, and not only appeared in person before the Court, but signed his full consent to all that was done.

It will be noted that the North Carolina statute does not contain any provision that the child be made a party to the proceeding, nor that it be present at the hearing, nor that its consent be obtained. There being no such statutory requirement, there is no necessity to meet these conditions, 2 C. J. S., Adoption of Children, page 383, § 20; 1 Am. Jur, page 640.

But it is said that the requirements of the statute were not complied with, in that the petition was not filed in the Superior Court of the county wherein such child resides, it being admitted that at the time of the filing of the petition and for about six years prior thereto

Mattie Lou F. Ashley resided in Marion County, South Carolina, with Sam G. Floyd and Donnie S. Floyd.

We are of the opinion that for the purposes of the adoption statute, the words "reside" and "residence," which appear to be words of elastic meaning, do not necessarily refer to the place of actual abode, but mean the domicile or legal residence of the child. The fact that Mattie Lou .F. Ashley was temporarily living in Marion County, South Carolina, does not, standing alone, constitute such county the place of her legal residence or domicile, within the meaning of such a statute, 2 C. J. S., Adoption of Children, page 417, § 35.

There is substantial uniformity of decision that an ▆▆▆▆ infant cannot, of its own volition, change its domicile. 19 C. J., page 411; and see cases cited in the notes. ·The rule of law is universally recognized that, every person at birth has his or her domicile in the country or place in which, at the time the person on whom the infant is legally dependent is then domiciled, whether it be at the place of the birth, or elsewhere. This domicile of origin, which in case of legitimate children is the domicile of the father if living, and if not that of the mother—continues to be the legal domicile of the child, unless changed by the parent during infancy, until he or she, upon attaining majority, or perhaps after being emancipated by the parents, acquires another. During dependency, the legal home or the place of domicile follows that of the child's parents, and it is well settled that if both parents be dead, the domicile of the child will be that of its origin, or if that has been changed by the parents, that of its last surviving parent. *Van Matre v. Sankey,* 148 Ill., 536, 36 N. E., 628, 23 L. R. A., 665, 39 Am. St. Rep., 196; and see *Yarborough v. Yarborough,* 290 U. S., 202, 54 S. Ct., 181, 78 L. Ed., 269, 90 A. L. R., 924, .overruling *Yarborough v. Yarborough,* 168 S. C., 46, 166 S. E., 877.

The Supreme Court of the United States in the *Yarborough case* said (page 185): "It is contended that the order for permanent alimony is not binding upon Sadie (she

was the minor daughter of W. A. Yarborough, of Georgia), because she was not a resident of Georgia at the time it was entered. Being a minor, Sadie's domicile was Georgia, that of her father; and her domicile continued to be in Georgia until entry of the judgment in question. She was not capable by her own act of changing her domicile. Neither the temporary residence in North Carolina at the time the divorce suit was begun, nor her removal with her mother to South Carolina before entry of the judgment, effected a change of Sadie's domicile."

It is universally held that the domicile of a minor is that of its father, notwithstanding the fact that he or she lives apart from him and in another state.

As to notice, the North Carolina statute does not require that the child shall be personally present in Court, or that it be notified of the proceeding. In this respect it differs from our own adoption statute (Section 8679, 1932 Code).

That the defendant, Mattie Lou F. Ashley, was domiciled in Robeson County, North Carolina, and for the purposes of adoption within the jurisdiction of the Superior Court of that county, does not seem to admit of doubt. That county was the legal residence of her father, W. Pink Floyd, and by operation of law it was her legal residence.

It is insisted by the appellants that the decree of adoption in the North Carolina Court, even if valid, cannot affect the descent of real property in South Carolina.

The purpose of this proceeding, as in the case of all adoption proceedings, was to change the status of the child in her relation to Sam G. Floyd and Donnie S. Floyd, and the decree of adoption was a declaration by a competent authority operative to change her status, and *ipso facto* to render her that which she was declared to be, the child of S. G. Floyd and his wife, and capable of inheriting from them in all respects, as if she had been their child born in lawful wedlock. The letters of adoption pursuant to the

statute under which the adoption proceedings were had, established the relation of parent and child, imposing upon the parties the reciprocal duties and obligations of that relation, and impressed upon and invested the child with the rights and qualities of a child, as an heir at law of her adoptive parents. *Van Matre v. Sankey, supra.*

It has been broadly stated that under adoption proceedings there are four interested parties: (1) The minor child; (2) the parents or those standing in place of the parents; (3) the party seeking to adopt; and (4) the state. Undoubtedly the person standing highest in interest is the child, and in this case its status for life was entirely and irrevocably changed by the result of the adoption proceedings. The general rule is that the adoption of a child authorized by the laws of the state gives it the status of a child of the adoptive parent, and this status, with the consequent capacity to inherit from such parent, will be recognized and upheld in every other state, so far as such laws are not inconsistent with its own laws and policy. Hence, a child adopted in one state has capacity to inherit land situated in another state, whose law and policy are not essentially different from the first state. *In re Williams' Estate,* 102 Ca., 70, 36 P., 407, 41 Am. St. Rep., 163; *Van Matre v. Sankey, supra; Gray v. Holmes,* 57 Kan., 217, 45 P., 596, 33 L. R. A., 207; Succession of Caldwell, 114 La., 195, 38 So., 140, 108 Am. St. Rep., 341; *Ross v. Ross,* 129 Mass., 243, 37 Am. Rep., 321. Also see annotations, 118 Am. St. Rep., 684, 109 Am. St. Rep., 674, 39 Am. St. Rep., 210.

The manifest tendency of the recent American decisions is to treat adoption as fixing the status of the child adopted, both in the state of its domicile, and in every other state in which its claim as an adopted child may be asserted, provided such course is not inconsistent with law and policy. 1 Am. Jur., 668. We are in full accord with these local decisions. They are consistent with our state

policy, and our adoption law (Section 8679), which provides that "such child or children shall be entitled to inherit from the said petitioner or petitioners as his, her or their lawful child or children."

There is another point which constitutes an insuperable bar as against the claim of the appellants, and that is the doctrine of estoppel invoked by the respondent.

It is generally held that an estoppel *in pais* operates to preclude adoptive parents and their privies from asserting the invalidity of adoption proceedings, or, at least, the status of the adopted child, when, by performance upon the part of the child, the adoptive parents have received all the benefits and privileges accruing from such performance, and they, by their representations, induce such performance under the belief of the existence of the status of an adopted child. In numerous cases involving a collateral attack on the validity of an adoption, it has been held that where an adoptive parent has selected his own forum, has obtained a decree of adoption, and has taken the adopted child into his home, his presumptive heirs and personal representatives, as well as he himself, are estopped thereafter from asserting that the adoption was invalid. 1 American Jurisprudence, Adoption of Children, Section 79, page 676, and the cases collected in the note supporting the text; *Harper v. Lindsey,* 162 Ga., 44, 132 S. E., 639.

It would certainly not comport with justice to permit a child to discharge the duties of that relation to an adoptive father for seventeen years, and then permit brothers and sisters of the adoptive father to come in and take from the child all of her rights as an heir.

In this case, Mattie Lou F. Ashley, according to the testimony, looked upon Sam G. Floyd and his wife, Donnie S. Floyd, as her father and mother, and they looked upon her as their child, and treated her as such. Following the death of the adoptive father, Mattie Lou Floyd married, and

moved to Fairmont, North Carolina, and her adoptive mother, Mrs. Donnie S. Floyd, now lives with her there, and the relationship of mother and daughter still exists, and is urgently asserted by both of them.

The policy of the law is well set forth in this language used by the Supreme Court of Wyoming in the case of *Nugent v. Powell,* 4 Wyo., 173, 201, 33 P., 23, 25, 20 L. R. A., 199, 62 Am. St. Rep., 17: "It must be admitted in the beginning that a proceeding in adoption was wholly unknown to the common law, and in our system of jurisprudence it is purely a statutory matter. Hence it follows that, in order to give any validity to such proceedings, they must have been conducted in substantial conformity with the provisions of the statute, and its requirements observed; but, notwithstanding this, it ought not to be overlooked in the examination of cases growing out of the exercise of this statutory right, that the right is a beneficial one both to the public and to those immediately concerned in its exercise. Since its incorporation into our system, (and the fact is such statutes have been adopted in nearly every one of our states), the homes of many childless parents have been brightened and made happier because the law enabled them to bring into that home a child upon whom their affections could center and develop. Many an orphan child, and many a child whose parents were unable by misfortune or their own infirmities to care for, have by means of this statutory right, found good homes, loving and affectionate parents, and thereby grown up to be good and valuable members of society, when otherwise they would have spent their early years in ignorance and vice, and in such surroundings have grown up to young manhood or young womanhood, simply to swell the overflowing ranks of the vicious and criminal classes of society; and hence it seems to me that in cases of this kind it is not the duty of the Courts to bring the judicial microscope to bear upon the case in order that every slight defect might be enlarged and magnified, so that

a reason might be found for declaring invalid an act consummated years before, but rather approach the case with the inclination to uphold such acts, if it is found that there was a substantial compliance with the statute."

It but remains to consider the contention made by the ██ appellants, that the adoption decree is invalid because the petition therefor was not actually signed by Donnie S. Floyd. The name of Donnie S. Floyd not only appears in the caption of the petition, but it affirmatively appears therein that it is "the petition of the petitioners, S. G. Floyd and his wife, Donnie S. Floyd." In every paragraph thereof reference is made to them as the persons who are making the petition for the adoption of the child. The North Carolina statute does not expressly require that the petition must be signed by the parties. In the absence of such requirement, we perceive no reason why such a pleading may not be signed by an agent or an attorney. In this case Mrs. Floyd had full knowledge of the adoption proceeding, joined with her husband as a party thereto, and has always treated the child as her own. At most here her failure to sign petition would amount to a mere irregularity. She and her privies would be estopped to deny it. 1 Am. Jur., page 674, Section 77; 2 C. J. S., Adoption of Children, page 420, § 37 (c); Bumpus' Estate, 23 Pa. Dist. R., 654.

It is interesting to note that following the decision of the North Carolina Supreme Court in the case of *Truelove v. Parker, supra,* the General Assembly of that State passed an Act (Consolidated Statutes, Code of 1935, Section 191 (11), validating and confirming all past adoption proceedings had in that State, and providing that the orders and judgments therein are declared to be binding upon all parties to the said proceedings and their privies, and upon all other parties.

As a result of the conclusions reached by the Court ██ upon the issues presented by this appeal, Donnie S. Floyd, the widow of Sam G. Floyd, is the owner in

456

fee of an undivided one-third interest in the tract of land, and Mattie Lou F. Ashley, the adopted daughter of Sam G. Floyd and of Donnie S. Floyd, is the owner in fee of an undivided two-thirds interest therein.

Judgment affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER concur.

MR. JUSTICE CARTER did not participate on account of illness.